**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE CITY OF EDINBURGH COUNCIL  :
ON BEHALF OF THE LOTHIAN  :
PENSION FUND, On Behalf of Itself and  :
All Others Similarly Situated,  :
  :
              Plaintiffs,  :   Civil Action No. 07 Civ 9921 (PKC)
        v.  :
  :
VODAFONE GROUP PUBLIC LIMITED  :
COMPANY, et al.,  :
  :
            Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE AMENDED COMPLAINT**

Gandolfo V. DiBlasi (GD-5913)
Theodore Edelman (TE-4678)
Jordan T. Razza (JR-5877)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-4000
Fax:  (212) 558-3588

*Counsel for Defendants*

June 6, 2008

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ...........................................................................................3

    I.      Procedural Background.................................................................................3

    II.     Alleged Facts ...............................................................................................4

ARGUMENT ...............................................................................................................5

    I.      There Is No Subject Matter Jurisdiction As To Lothian's Claims...............5

          A.     Lothian Has Failed To Allege U.S. Effects Sufficient
                 To Confer Subject Matter Jurisdiction.............................................6

          B.     Lothian Has Failed To Allege U.S. Conduct Sufficient
                 To Confer Subject Matter Jurisdiction.............................................7

          C.     The Addition Of A Domestic Purchaser Cannot Create
                 Subject Matter Jurisdiction As To Lothian's Claims.....................10

    II.     The Complaint Fails to Plead Fraud with Sufficient Particularity.............10

          A.     The Complaint Should Be Dismissed For Failure
                 To Identify The Statements That Allegedly Were
                 Fraudulent And The Basis For Alleging Fraud..............................11

          B.     Plaintiffs' Failure To Specify When And Why The
                 Impairment Should Have Been Recognized
                 Is Fatal To Their Claims ................................................................12

    III.    The Amended Complaint Fails To Plead Materially False
          Statements Or Omissions That Are Actionable Under
           Section 10(b) .............................................................................................16

          A.     Plaintiffs' Allegations Regarding Defendants' Supposed
                 Corporate Mismanagement Are Not Actionable Under
                 Section 10(b) .................................................................................17

          B.     Many Of The Statements Challenged In The Complaint Are
                 Not Of Types That Are Actionable Under The U.S.
                 Securities Laws ..............................................................................18

               1.      Forward-Looking Statements.............................................18

               2.      Puffery..............................................................................21

               3.      Third Party Statements......................................................22

IV.   The Complaint Fails Adequately to Allege Scienter ..................................23

    A.   The Complaint's Motive Allegations
        Are Legally Insufficient.................................................................23

    B.   The Complaint Fails to Plead Strong Circumstantial
        Evidence of Conscious Misbehavior or Recklessness..................26

V.   Plaintiffs Fail to State a Claim for Control Person Liability Under
    Section 20(a) ............................................................................................28

CONCLUSION...........................................................................................................29

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acito* v. *IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) ............................................................................. 13-14, 23

*Bedford Oak Partners, LP* v. *ICN Pharm. Inc.*,
  184 Fed. Appx. 672 (9th Cir. 2006).............................................................................17

*Caiafa* v. *Sea Containers Ltd.*,
  525 F. Supp. 2d 398 (S.D.N.Y. 2007)............................................................... 15-16, 23

*City of Sterling Heights Police & Fire Ret. Sys.* v. *Abbey Nat'l PLC*,
  423 F. Supp. 2d 348 (S.D.N.Y. 2006)..........................................................................16

*Coates* v. *Heartland Wireless Comm'ns, Inc.*,
  100 F. Supp. 2d 417 (N.D. Tex. 2000) .......................................................................14

*Dietrich* v. *Bauer*,
  76 F. Supp. 2d 312 (S.D.N.Y. 1999)............................................................................16

*DiLeo* v. *Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ...............................................................................15, 17

*Europe & Overseas Comm. Traders, S.A.* v. *Banque Paribas*,
  147 F.3d 118 (2d Cir. 1998)........................................................................................6

*Fadem* v. *Ford Motor Co.*,
  157 Fed. Appx. 398 (2d Cir. 2005)..............................................................................15

*Fadem* v. *Ford Motor Co.*,
  352 F. Supp. 2d 501 (S.D.N.Y. 2005)..........................................................................15

*Fishbaum* v. *Liz Claiborne, Inc.*,
  189 F.3d 460, 1999 WL 568023 (2d Cir. 1999) ....................................................25, 26

*Froese* v. *Staff*,
  No. 02 Civ. 5744 (RO), 2003 WL 21523979 (S.D.N.Y. July 7, 2003) ....................6, 8

*Gavish* v. *Revlon, Inc.*,
  No. 00 Civ. 7291 (SHS), 2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004) ...................20

*GSC Partners CDO Fund* v. *Washington*,
  368 F.3d 228 (3d Cir. 2004).......................................................................................20

*Harrison* v. *Rubenstein*,
    No. 02 Civ. 9356 (DAB), 2007 WL 582955 (S.D.N.Y. Feb. 26, 2007) ....................28

*Havenick* v. *Network Express*,
    981 F. Supp. 480 (E.D. Mich. 1997).........................................................................12

*In re Acterna Corp. Sec. Litig.*,
    378 F. Supp. 2d 561 (D. Md. 2005) ...........................................................14, 15, 18

*In re Advanta Corp. Sec. Litig.*,
    180 F.3d 525 (3d Cir. 1999)..............................................................................11, 22

*In re Aegon N.V. Sec. Litig.*,
    No. 03 Civ. 0603 (RWS), 2004 WL 1415973 (S.D.N.Y. June 23, 2004) .................27

*In re Alstom SA Sec. Litig.*,
    406 F. Supp. 2d 346 (S.D.N.Y. 2005)....................................................................6, 9

*In re Astrazeneca Sec. Litig.*,
    No. 05 Civ. 2688 (TPG) slip op. (S.D.N.Y. June 3, 2008) ................................. *passim*

*In re Authentidate Holding Corp. Sec. Litig.*,
    No. 05 Civ. 5323 (LTS) (DFE), 2006 WL 2034644 (S.D.N.Y. July 14, 2006) .........22

*In re Autodesk, Inc. Sec. Litig.*,
    132 F. Supp. 2d 833 (N.D. Cal. 2000) .....................................................................12

*In re AXIS Capital Holdings Ltd. Sec. Litig.*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006).......................................................................17

*In re Bayer AG Sec. Litig.*,
    423 F. Supp. 2d 105 (S.D.N.Y. 2005)..............................................................5-6, 10

*In re BISYS Sec. Litig.*,
    397 F. Supp. 2d 430 (S.D.N.Y. 2005)................................................................24, 28

*In re Bristol-Myers Squibb Sec. Litig.*,
    312 F. Supp. 2d 549 (S.D.N.Y. 2004)...............................................................23, 26

*In Re Carter-Wallace, Inc. Sec. Litig.*,
    220 F.3d 36 (2d Cir. 2000).......................................................................................27

*In re Corning Sec. Litig.*,
    01-CV-6580-CJS, 2004 WL 1056063 (W.D.N.Y. Apr. 9, 2004)...............................13

*In re Duane Reade Sec. Litig.*,
    No. 02 Civ. 6478 (NRB), 2003 WL 22801416 (S.D.N.Y Nov. 25, 2003) .................27

*In re Eastman Kodak Co. Sec. Litig.*,
    No. 6:05-cv-6326-MAT, 2006 WL 3149361 (W.D.N.Y. Nov. 1, 2006)....................20

*In re Elan Corp. Sec. Litig.*,
    No. 05 Civ. 2860 (RJH), 2008 WL 839744 (S.D.N.Y. Mar. 27, 2008)......................18

*In re Entrust Sec. Litig.*,
    No. 2:00CV119, 2002 WL 31968321 (E.D. Tex. Sept. 30, 2002) ......................11, 12

*In re eSpeed, Inc. Sec. Litig.*,
    457 F. Supp. 2d 266 (S.D.N.Y. 2006)..................................................................25, 26

*In re Exxon Mobil Corp.*,
    387 F. Supp. 2d 407 (D.N.J. 2005) ............................................................ 10-11, 16

*In re Exxon Mobil Corp.*,
    500 F.3d 189 (3d Cir. 2007)......................................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    308 F. Supp. 2d 249 (S.D.N.Y. 2004).......................................................................14

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510 (CPS), 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005)....................20

*In re IAC/InterActiveCorp Sec. Litig.*,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007).......................................................................20

*In re ICN Pharms., Inc., Sec. Litig.*,
    299 F. Supp. 2d 1055 (C.D. Cal. 2004) ...................................................................17

*In re Indep. Energy Holdings Plc. Sec. Litig.*,
    154 F. Supp. 2d 741 (S.D.N.Y. 2001).......................................................................18

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ......................................................................25

*In re K-tel Int'l, Inc., Sec. Litig.*,
    107 F. Supp. 2d 994 (D. Minn. 2000).................................................................. 14-15

*In re K-tel Int'l, Inc., Sec. Litig.*,
    300 F.3d 881 (8th Cir. 2002) ...................................................................................15

*In re LaBranche Sec. Litig.*,
    405 F. Supp. 2d 333 (S.D.N.Y. 2005).......................................................................24

*In re Marsh & McLennan Cos. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006).......................................................................17

*In re Nat'l Australia Bank Sec. Litig.*,
   No. 03 Civ 6537 (BSJ), 2006 WL 3844465 (S.D.N.Y. Oct. 25, 2006) ..............6, 8, 10

*In re Nokia Corp. Sec. Litig.*,
   1998 U.S. Dist. LEXIS 4100, No. 96-CIV-3752 (S.D.N.Y. Apr. 1, 1998) ................13

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
   423 F. Supp. 2d 364 (S.D.N.Y. 2006).......................................................................21

*In re Parmalat Sec. Litig.*,
   376 F. Supp. 2d 472 (S.D.N.Y. 2005).........................................................................6

*In re Parmalat Sec. Litig.*,
   497 F. Supp. 2d 526 (S.D.N.Y. 2007).........................................................................7

*In re Prestige Brands Holding, Inc.*,
   No. 05 Civ. 06924 (CLB), 2006 WL 2147719 (S.D.N.Y. July 10, 2006) ..................17

*In re Regeneron Pharms., Inc. Sec. Litig.*,
   03 Civ. 3111 (RWS), 2005 WL 225288 (S.D.N.Y. Feb. 1, 2005)..............................26

*In re Rhodia S.A. Sec. Litig.*,
   531 F. Supp. 2d 527 (S.D.N.Y. 2007)................................................................ *passim*

*In re Scor Holding (Switz.) AG Litig.*,
   537 F. Supp. 2d 556 (S.D.N.Y. 2008)................................................................ *passim*

*In re Sierra Wireless, Inc. Sec. Litig.*,
   482 F. Supp. 2d 365 (S.D.N.Y. 2007).......................................................................17

*In re Sina Corp. Sec. Litig.*,
   No. 05 Civ. 2154, 2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006)...................... *passim*

*In re Sotheby's Holdings, Inc. Sec. Litig.*,
   No. 00 Civ. 1041 (DLC), 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000).............21, 28

*In re Symbol Techs. Class Action Litig.*,
   950 F. Supp. 1237 (E.D.N.Y. 1997) .........................................................................26

*In re Take-Two Interactive Sec. Litig.*,
   No. 06 Civ. 803 (SWK), 2008 WL 1757823 (S.D.N.Y. Apr. 16, 2008) ..............24, 26

*In re Ultrafem Inc. Sec. Litig.*,
   91 F. Supp. 2d 678 (S.D.N.Y. 2000).........................................................................16

*In re XM Satellite Radio Holdings Sec. Litig.*,
   479 F. Supp. 2d 165 (D.D.C. 2007).....................................................................21, 22

*In re Yukos Oil Co. Sec. Litig.*,
  No. 04-5243, 2006 WL 3026024 (WHP) (S.D.N.Y. Oct. 25, 2006) .............. 7, 8-9, 28

*Interbrew, S.A.* v. *Edperbrascan Corp.,*
  23 F. Supp. 2d 425 (S.D.N.Y. 1998).............................................................................6

*Itoba Ltd.* v. *LEP Group PLC,*
  54 F.3d 118 (2d Cir. 1995)........................................................................................7

*Kalnit* v. *Eichler,*
  264 F.3d 131 (2d Cir. 2001)................................................................................23, 27

*LC Capital Partners, L.P.* v. *Frontier Ins. Group.,*
  318 F.3d 148 (2d Cir. 2003)......................................................................................16

*Lentell* v. *Merrill Lynch & Co.,*
  396 F.3d 161 (2d Cir. 2005)......................................................................................16

*Marcus* v. *Frome,*
  No. 02 Civ. 6192 JGK, 2003 WL 21800966 (S.D.N.Y. Aug. 5, 2003).......................28

*Novak* v. *Kasaks,*
  216 F.3d 300 (2d Cir. 2000)..........................................................................13, 22, 27

*Rombach* v. *Chang,*
  355 F.3d 164 (2d Cir. 2004).................................................................... 12-13, 22, 23

*Rothman* v. *Gregor,*
  220 F.3d 81 (2d Cir. N.Y. 2000).........................................................................24, 25

*Salinger* v. *Projectavision, Inc.,*
  934 F. Supp. 1402 (S.D.N.Y. 1996).........................................................................16

*San Leandro Emergency Med. Group Profit Sharing Plan* v.
  *Philip Morris Cos., Inc.,*
  75 F.3d 801 (2d Cir. 1996).......................................................................................25

*Santa Fe Indus., Inc.* v. *Green,*
  430 U.S. 462 (1977)..................................................................................................17

*Schiller* v. *Physicians Resource Group, Inc.,*
  No. 3:97-cv-3158-L, 2002 WL 318441 (N.D. Tex. Feb. 26, 2002) .....................14, 15

*SEC* v. *Berger,*
  322 F.3d 187 (2d Cir. 2003)........................................................................................8

*Serabian* v. *Amoskeag Bank Shares, Inc.,*
  24 F.3d 357 (1st Cir. 1994).......................................................................................17

*Shaw* v. *Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996) ................................................................ 21-22

*Southland Sec. Corp.* v. *INSpire Ins. Solutions Inc.*,
    365 F.3d 353 (5th Cir. 2004) ..................................................................12

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) ..........................................................................23

*Tri-Star Farms Ltd.* v. *Marconi, Plc*,
    225 F. Supp. 2d 567 (W.D. Pa. 2002) ............................................7, 9, 10

*Williams* v. *WMX Techs.*,
    112 F.3d 175 (5th Cir. 1997) ..................................................................12

### FEDERAL RULES, STATUTES AND REGULATIONS

15 U.S.C. § 77z-2 .........................................................................................18

15 U.S.C. § 78j(b) ............................................................................... *passim*

15 U.S.C. § 78m(b)(2) ..................................................................................18

15 U.S.C. § 78t-1(a) ................................................................................2, 28

15 U.S.C. § 78u-4(b)(2) ...................................................................... *passim*

15 U.S.C. § 78u-5(c) ..............................................................................18, 20

17 C.F.R. § 240.10b-5 .......................................................................... *passim*

28 U.S.C. § 1658(b)(1) .................................................................................16

Fed. R. Civ. P. 9(b) ............................................................................. *passim*

Fed. R. Civ. P. 12(b) ......................................................................................1

Defendants Vodafone Group Plc ("Vodafone") and Andrew N. Halford, Kenneth J. Hydon, Lord Ian MacLaurin of Knebworth and Arun Sarin (collectively, the "Individual Defendants" and, with Vodafone, "Defendants") respectfully submit this memorandum of law in support of their motion (the "Motion") to dismiss with prejudice *The Amended Complaint for Violation of the Federal Securities Laws* (the "Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA").

## PRELIMINARY STATEMENT

Rather than complying with the PSLRA's requirements of clarity and specificity, the Complaint is a paradigm of prolixity and generality. Plaintiffs attempt to compensate for the Complaint's manifest lack of substance by means of the litigation equivalent of throwing as many allegations as they can "against the wall" in the hope that something might stick. Plaintiffs contend, without any of the requisite factual particulars, that Defendants committed fraud because Defendants allegedly delayed the recognition of an impairment charge for certain of the goodwill associated with Vodafone's German, Italian and Japanese operations. The Complaint's lack of support for those claims is evident from the very structure of the Complaint, which presents a jumble of lengthy block quotations, interspersed with repeated incantations of purported generic "facts," apparently intended to demonstrate the falsity of the preceding quotations. This Complaint would provide endless amusement for the jigsaw puzzle aficionado, who could spend weeks trying to: (i) identify the statements that Plaintiffs actually allege to be fraudulent; and then (ii) search through the Complaint for specific allegations of the corresponding "true facts" that supposedly demonstrate the "when," "why" and "how" of the alleged fraud.

The Complaint's flaws are not merely structural. Although Plaintiffs base their claims on the alleged tardy recognition of the impairment, they nowhere allege when and in what amount the impairment should have been recognized, the appropriate valuations and precipitants for the impairment charge, or the state of Defendants' knowledge at any relevant time. Instead, Plaintiffs rely on the classic fraud-by-hindsight approach, assuming that, because there was an impairment, there must have been fraud. Such backward-looking assumptions are not cognizable under the federal securities laws.

Even if Plaintiffs were somehow able to fill in these craters, the Complaint would still merit dismissal because of its other manifest deficiencies. *First*, as a threshold matter, there is no subject matter jurisdiction as to the initial Lead Plaintiff's claims because that plaintiff allegedly was a foreign purchaser of foreign shares on a foreign exchange and the Complaint fails to allege any U.S.-based fraudulent conduct. *Second*, many of the statements alleged to be fraudulent are, by their very nature, not actionable because they are forward-looking statements, puffery or statements made by third parties. *Third*, Plaintiffs fail to plead sufficient allegations of scienter. Ultimately, Plaintiffs' contentions constitute, at most, disagreements with the technical accounting judgments that Defendants made with respect to the long-term value of certain of Vodafone's intangible assets. If such allegations could provide the predicate for any claim (and they cannot), that claim would amount, at most, to assertions of corporate mismanagement. For all of these reasons, Plaintiffs have failed to allege any basis for liability under Section 10(b) and Rule 10b-5; and, thus, their "control person" claim under Section 20(a) also must fail.

Although Vodafone publicly reported on February 27, 2006 that it would recognize the impairment at issue here, this action was not commenced until nearly two years later; and, until April 2008, only one plaintiff publicly expressed any interest in

pursuing this supposed "fraud." That plaintiff had nearly five months in which to amend

the Complaint, during which, the Complaint alleges, its representatives interviewed

various current and former Vodafone personnel. And yet, conspicuously absent from the

Complaint is any reference to internal documents, specific conversations or reports that

could support Plaintiffs' claims. Stated bluntly, Plaintiffs have taken their best shot and it

has fallen well wide of the mark. Accordingly, Defendants respectfully request that the

Court dismiss the Complaint in its entirety with prejudice.

## STATEMENT OF FACTS

### I.    Procedural Background

On November 9, 2007, The City of Edinburgh Council on Behalf of the

Lothian Pension Fund ("Lothian"), a Scottish pension fund that allegedly purchased

Vodafone ordinary shares outside the United States, filed its initial complaint in this

action, asserting claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange

Act of 1934 and Rule 10b-5 against Defendants and six other current and former officers

and directors of Vodafone (the "Dismissed Defendants"). No other purported lead

plaintiffs sought to enter the fray, and Lothian was appointed Lead Plaintiff by Order

entered February 25, 2008. On March 26, 2008, Lothian filed an Amended Complaint.

The parties appeared before the Court on April 4, 2008 for a status conference, at which

Defendants identified various deficiencies in the Complaint, including lack of subject

matter jurisdiction over Lothian's claims, and sought leave to file this Motion. At the

Court's instruction, the parties submitted letters outlining their arguments, respectively,

in support of, and in opposition to, dismissal. Thereafter, the Court granted Defendants

leave to file this Motion. By Stipulation and Order entered on May 27, 2008, the Court

dismissed without prejudice the claims against the Dismissed Defendants[1] and permitted
the City of Sterling Heights Police & Fire Retirement System, which allegedly purchased
Vodafone's American Depositary Receipts ("ADRs") during the putative class period, to
join Lothian as a named plaintiff in order to avoid the prospect of complete dismissal of
this action for lack of subject matter jurisdiction.

## II.    Alleged Facts

Plaintiffs purport to bring this action "on behalf of all persons who
purchased Vodafone's publicly traded securities, including ADRs and ordinary shares, on
the open market during the Class Period."  (Compl. ¶ 163).  Vodafone is a mobile
telecommunications company incorporated under the laws of the United Kingdom with
its principal place of business in Newbury, England.  According to the Complaint, the
Individual Defendants (all of whom are located outside the United States) held various
executive positions in the Vodafone organization during the alleged class period.  (*Id*.
at ¶¶ 26, 28-29, 35).

In essence, Plaintiffs claim that Vodafone artificially inflated the price of
its stock during the alleged class period by issuing "false assurances regarding the state of
Vodafone's Japanese, German and Italian operations, its future cash flows, the success of
the One Vodafone program and the level of Vodafone's future cash tax payments . . ."
(*Id*. at ¶ 13).  Plaintiffs allege that Vodafone subsequently released financial information
that contradicted these alleged misstatements.  Specifically, Plaintiffs allege that, on
November 15, 2005, Vodafone announced a "23% decline in operating profits for the six-
month period ending 9/30/05 . . . and reveal[ed] that it faced at least $7 billion in cash
flow impairments due to cash tax payments to be made in F06-08 . . ."  (*Id*. at ¶ 14).

---

[1]    The Dismissed Defendants are Messrs. Peter R. Bamford, Paul M. Donovan, Thomas
Geitner, Alan P. Harper, Jürgen von Kuczkowski and Sir Julian M. Horn-Smith.

Plaintiffs further allege that, on February 27, 2006, Vodafone announced a $40 to $49 billion impairment charge, constituting primarily a write-off of certain of the goodwill associated with Vodafone's German, Italian and Japanese operating companies. (*Id.*)

The gist of the Complaint is that Vodafone allegedly knew prior to February 27, 2006, based on a repeated list of generic assertions, that Vodafone could not have achieved the levels of financial performance that Vodafone had forecast for fiscal years 2006 and 2007 and, thus, should have recognized the impairment charge earlier. The Complaint alleges that Vodafone disclosed that it had conducted periodic impairment reviews and had concluded in connection with the reviews prior to February 2006 that no impairment existed for Vodafone's operations in Germany, Italy or Japan.  (*See, e.g.*, Compl. ¶¶ 55, 56, 68(b)-(e)).  The Complaint does not allege that any of those prior impairment reviews (which involve highly technical accounting judgments about the long-term values of various classes of assets) had been conducted fraudulently or that those reviews had manifested a relevant impairment prior to February 2006. Additionally, the Complaint does not even specify the facts or events that should have caused Vodafone to report the impairment charge earlier or identify when the impairment should have been recognized; nor does the Complaint allege any specific basis to contend that, at the time that the statements challenged in the Complaint were made, Defendants had any reason to believe that those statements were false.

## ARGUMENT

### I.    There Is No Subject Matter Jurisdiction As To Lothian's Claims.

Subject matter jurisdiction over securities fraud claims involving largely foreign transactions exists "only where a sufficient connection to the United States is present."  *In re Bayer AG Sec. Litig.*, 423 F. Supp. 2d 105, 110 (S.D.N.Y. 2005).  Two

jurisdictional tests guide a court's determination on this issue:  the "conduct test" and the "effects test."  *See*, *e.g.*, *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 538 (S.D.N.Y. 2007).  Lothian's claims fail under both tests.

### A.    Lothian Has Failed To Allege U.S. Effects Sufficient To Confer Subject Matter Jurisdiction.

The effects test "concerns the impact of overseas activity on U.S. investors and securities traded on U.S. securities exchanges."  *Id.* (quoting *Europe & Overseas Comm. Traders, S.A.* v. *Banque Paribas*, 147 F.3d 118, 128 (2d Cir. 1998)).  Under that test, there is subject matter jurisdiction only "if the defendant's conduct abroad has 'substantial' impact in the United States."  *Interbrew, S.A.* v. *Edperbrascan Corp.,* 23 F. Supp. 2d 425, 429 (S.D.N.Y. 1998).  This test "has no bearing in an action involving the claims of foreign purchasers of a foreign company's securities on foreign exchanges . . ."  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 369 (S.D.N.Y. 2005) (foreign purchasers of shares listed on foreign exchanges may not "piggyback on the harm caused by the alleged fraud to investors and markets in the United States and thus bring their claims in United States courts"); *see also In re Scor Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 562-63 (S.D.N.Y. 2008) (effects test not satisfied by claims of non-U.S. investors on markets outside U.S.); *In re Nat'l Australia Bank Sec. Litig.*, No. 03 Civ 6537 (BSJ), 2006 WL 3844465, at *3 (S.D.N.Y. Oct. 25, 2006) (the effects test "is not satisfied when predominantly foreign-based fraud only tangentially impacts the United States market . . .").[2]

---

[2]    *See also In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 511 & n.194 (S.D.N.Y. 2005) (the effects test is meant to shield only domestic investors and domestic markets from the effects of securities fraud perpetrated elsewhere); *Froese* v. *Staff*, No. 02 Civ. 5744 (RO), 2003 WL 21523979, at *2 (S.D.N.Y. July 7, 2003) (effects test not satisfied when plaintiffs are all foreign, defendant is a German corporation and securities were sold on a German exchange).

Lothian cannot establish subject matter jurisdiction based on its alleged purchases of ordinary shares of Vodafone on the London Stock Exchange because Lothian is "not [an] American investor[], [it] did not purchase [its] securities on an American exchange, and [it] did not suffer the effects" of Defendants' alleged conduct within the United States. *Tri-Star Farms Ltd.* v. *Marconi*, *Plc*, 225 F. Supp. 2d 567, 573 (W.D. Pa. 2002); *see also Scor*, 537 F. Supp. 2d at 562-63.

### B.      Lothian Has Failed To Allege U.S. Conduct Sufficient To Confer Subject Matter Jurisdiction.

Lothian also cannot satisfy the "conduct" test. Subject matter jurisdiction under that test exists "only when substantial acts in furtherance of the fraud were committed within the United States." *In re Yukos Oil Co. Sec. Litig.*, No. 04-5243, 2006 WL 3026024 (WHP), at *9 (S.D.N.Y. Oct. 25, 2006) (citation omitted). This standard is satisfied if "(1) the defendant's activities in the United States were more than 'merely preparatory' to a securities fraud conducted elsewhere, and (2) these activities or culpable failures to act within the United States directly caused the claimed losses." *Rhodia*, 531 F. Supp. 2d at 538 (citations omitted); *In re Astrazeneca Sec. Litig.*, No. 05 Civ. 2688 (TPG), slip op. 1, 23 (S.D.N.Y. June 3, 2008). Conversely, there is no subject matter jurisdiction "where the United States activities are merely preparatory or take the form of culpable nonfeasance and are relatively small in comparison to those abroad . . ." *In re Parmalat Sec. Litig.*, 497 F. Supp. 2d 526, 531 (S.D.N.Y. 2007) (quoting *Itoba Ltd.* v. *LEP Group PLC*, 54 F.3d 118, 122 (2d Cir. 1995)).

Under the first step of the conduct test, the alleged fraudulent conduct must be more than merely the "object[] of fraudulent representations made abroad" or "a link in the chain of the overall scheme, which was perpetrated abroad"; it must be securities fraud in and of itself that was "engineered" in the United States. *Rhodia*, 531

F. Supp. 2d at 539-40.[3]  To be more than merely preparatory, the fraudulent scheme must be masterminded and implemented by the defendant in the United States.  *See SEC* v. *Berger*, 322 F.3d 187, 194 (2d Cir. 2003); *Scor*, 537 F. Supp. 2d at 566 (no subject matter jurisdiction where key decisions underlying alleged misrepresentations—including decisions regarding how to address loss reserve problems and how to represent those problems to the public—were made abroad).

This element of the conduct test focuses "on the location from where allegedly false statements emanated and the circumstances of the statements' dissemination, since this conduct . . . typically embodies the heart of the alleged fraud." *Yukos*, 2006 WL 3026024, at *9-10 ("single SEC filing by a foreign corporation is not a substantial act[] in furtherance of the fraud sufficient to confer federal subject matter jurisdiction" where plaintiffs challenged "a raft of allegedly misleading statements" contained within the defendant's Annual Report, but failed to allege that the document itself was prepared in the United States) (citations omitted); *Scor*, 537 F. Supp. 2d at 568 ("the act of filing documents with the SEC is insufficient standing alone to confer jurisdiction in an action for damages"); *Rhodia*, 531 F. Supp. 2d at 540 (irrelevant that the allegedly fraudulent statements "trickled" over to the United States because plaintiffs failed to allege "that those statements were engineered" in the United States).  Nor does a defendant's activities in the United States, such as solicitation of investors here, through the personal appearance of executives create subject matter jurisdiction, unless, "in addition to communications with or meetings in the United States wherein allegedly

---

[3]    *See also Froese*, 2003 WL 21523979, at *2 (where German parent company allegedly concealed overstatement of revenues by American subsidiary, "the fraud itself occurred, if at all, when the allegedly fraudulent statements were conceived, engineered, and published in Germany"); *Nat'l Australia Bank*, 2006 WL 3844465, at *8 (although Australian bank allegedly knowingly presented to foreign shareholders allegedly fraudulent financial models generated by its American subsidiary, subsidiary's alleged fraudulent conduct was not itself securities fraud, but rather "a link in the chain of an alleged overall securities fraud scheme that culminated abroad").

fraudulent misstatements were made, there has also been a transaction on a U.S.

exchange, economic activity in the U.S., harm to a U.S. party, or activity by a U.S.

person or entity meriting redress." *Yukos,* 2006 WL 3026024, at *10 (internal quotations

and citation omitted).

        The second step of the conduct test requires a determination of "whether

Defendants' activities or culpable failures to act within the United States 'directly caused'

[Plaintiffs'] claimed losses." *Rhodia*, 531 F. Supp. 2d at 540 (citation omitted); *Scor*, 537

F. Supp. 2d at 569. American securities laws do not apply to alleged foreign frauds

unless "there is a sufficient connection between substantial domestic activities of the

transaction alleged to have violated the securities laws and the consequential financial

losses the claimant asserts." *Rhodia*, 531 F. Supp. 2d at 540 (quoting *Alstom*, 406

F. Supp. 2d at 380-381); *Astrazeneca*., slip op. at 23-24. SEC filings alone "are

insufficient to trigger" the court's subject matter jurisdiction over foreign plaintiffs.

*Rhodia*, 531 F. Supp. 2d at 540. Plaintiffs must show that any SEC filings "conceived,

engineered, and published on foreign soil" were "relied upon by American investors in

making their investment decisions." *Id*.; *see also Scor*, 537 F. Supp. 2d at 5669 & n.18

(foreign plaintiff failed to show that SEC filings "directly caused" alleged losses); *Tri-*

*Star Farms Ltd*., 225 F. Supp. 2d at 577-78 (no subject matter jurisdiction where SEC

filings and dissemination of the statements published in the foreign press in the United

States "could not have played a significant role in furtherance of any fraud perpetrated

against the foreign investors").

        In addition, Lothian cannot satisfy the conduct test by asserting that

Vodafone is "subject to the . . . U.S. securities laws" (Compl. ¶ 21). That assertion is

irrelevant to the question of whether the claims of foreign purchasers of securities on

foreign exchanges are cognizable here (even if the claims of other plaintiffs with a

sufficient nexus to the United States might be).  Lothian's failure to allege, let alone

establish, that Defendants' allegedly fraudulent conduct emanated from the United States

and that Lothian relied on any allegedly fraudulent conduct in the United States in

deciding to purchase Vodafone shares is fatal to its attempt to invoke this Court's

jurisdiction over its claims and those of similarly situated investors.  *See*, *e.g*., *Rhodia*,

531 F. Supp. 2d at 541; *Bayer*, 423 F. Supp. 2d at 112-13; *Tri Star Farms Ltd.,*

225 F. Supp. 2d at 577-78.

> **C.    The Addition Of A Domestic Purchaser Cannot Create Subject
>          Matter Jurisdiction As To Lothian's Claims.**

The addition of a U.S.-based plaintiff that allegedly purchased Vodafone

ADRs cannot create subject matter jurisdiction as to Lothian.  Jurisdiction "is assessed

'claim by claim,' and plaintiff by plaintiff."  *Scor*, 537 F. Supp. 2d at 560.  When an

action "is brought on behalf of both domestic and foreign purchasers, a separate

evaluation of the existence of subject matter jurisdiction for each plaintiff—or, in a class

action, each category of plaintiffs—must be made."  *Id*. at 561.  Where jurisdiction exists

for one plaintiff, but not for another plaintiff, the "remedy in such circumstances is to

dismiss the plaintiff bringing [the] defective claims."  *Id*.  Because there is no subject

matter jurisdiction over Lothian's claims under the effects or conduct test, Lothian's

claims should be dismissed.  *See Nat'l Australia Bank*, 2006 WL 3844465, at *8.

**II.    The Complaint Fails to Plead Fraud with Sufficient Particularity.**

Under the heightened pleading requirements of the PSLRA and Rule 9(b),

plaintiffs must "specify each statement alleged to have been misleading, [and] the reason

or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).  To satisfy this

requirement, a plaintiff must provide all the essential factual background that would

accompany the first paragraph of any properly written newspaper story:  the "who, what,

when, where and how" of the alleged fraud.  *In re Exxon Mobil Corp.*, 387 F. Supp. 2d

-10-

407, 414 (D.N.J. 2005), *aff'd*, 500 F.3d 189 (3d Cir. N.J. 2007) (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)).  Here, Plaintiffs have not only failed to comply with this pleading standard, they have not even identified clearly the portions of the statements quoted in the Complaint that they allege are false and misleading.  The Complaint, thus, fails to satisfy the minimum pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA.

> A.    **The Complaint Should Be Dismissed For Failure To Identify The Statements That Allegedly Were Fraudulent And The Basis For Alleging Fraud.**

The Complaint is an unwieldy compilation of block quotes from Vodafone's public disclosures and third-party analyst reports and newspaper articles—some of which contain statements that cannot seriously be regarded as false and misleading, and few of which are even clearly alleged to be.[4]  Interspersed among the parade of block quotations at random intervals throughout the Complaint are repeated incantations of boilerplate, generic contentions that purport to "explain" why the prior quoted statements allegedly were false (*see*, *e.g.*, Compl. ¶¶ 68, 75, 78, 84, 94, 99, 104, 123), although some of those contentions lack any apparent connection to the purported false statements to which they are alleged to refer.[5]  But, a plaintiff cannot merely

---

[4]    In a futile attempt to comply with the pleading requirements, Plaintiffs reproduce certain portions of the block-quoted statements in bold-face italic font, presumably to provide Defendants with "clues" as to which statements allegedly were false—precisely the form of pleading found insufficient to survive a motion to dismiss in *In re Sina Corp. Sec. Litig.*, No. 05 Civ. 2154, 2006 WL 2742048, at *6 (S.D.N.Y. Sept. 26, 2006), and *In re Entrust Sec. Litig.*, No. 2:00CV119, 2002 WL 31968321, at *3-4 (E.D. Tex. Sept. 30, 2002).  This technique provides no enlightenment; and, indeed, certain of the designated excerpts contain information that Lothian could not possibly allege to be false.  (*See*, *e.g.*, Compl. ¶ 55 ("UK GAAP requires management to ***undertake a review for impairment if events*** or changes in circumstances indicate that the carrying amount of an asset may not be recoverable.") (emphasis in original).)

[5]    *Compare* Compl. ¶¶ 76-77 (block quotes from press release and analyst conference call regarding Vodafone's preparation for the adoption of International Financial Reporting Standards) *with* ¶ 78 (boiler-plate allegations of supposedly "true facts" conclusorily alleged

compile a long string of block quotes and line them "up against a conclusory list of omissions and pronounce that fraud exists." *Havenick* v. *Network Express*, 981 F. Supp. 480, 526 (E.D. Mich. 1997); *see also Sina*, 2006 WL 2742048, at *6 ("large block quotes . . . followed by generalized explanations of why the statements collectively misled the plaintiffs" fail to satisfy pleading requirements); *Entrust*, 2002 WL 31968321, at *3-4 (E.D. Tex. Sept. 30, 2002) (complaint dismissed where plaintiffs made "no attempt to attribute any significance" to bolded and italicized portions of statements and did not "state whether they contend the bold or italicized portions are the claimed false or misleading statements"). The Complaint illustrates how "[a] complaint can be long-winded, even prolix, without pleading with particularity. . . . [S]uch a garrulous style is not an uncommon mask for an absence of detail." *Southland Sec. Corp.* v. *INSpire Ins. Solutions Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams* v. *WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997)). Neither the Court nor Defendants should have to "search through" the Amended Complaint in an effort to link the allegedly false statements to the reasons why those statements purportedly are false. *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 841-42 (N.D. Cal. 2000).

### B. Plaintiffs' Failure To Specify When And Why The Impairment Should Have Been Recognized Is Fatal To Their Claims.

The Complaint does not allege any specific factual basis for claiming that Defendants improperly delayed disclosure of impaired goodwill at Vodafone. Even if Plaintiffs' generic list of purported "facts" (*supra* § II.A) were sufficiently specific to demonstrate with the requisite particularity why the alleged misstatements were fraudulent (and they are not), nowhere do Plaintiffs explain when and why the impairment should have occurred and in what amount. The Second Circuit has made

---

to be known to, or recklessly disregarded by, Defendants with regard to certain of Vodafone's international operations and product lines).

clear that, in order "[t]o meet the pleading requirement of Rule 9(b), plaintiffs cannot rest

on their say-so" in alleging that "statements are fraudulent; they must explain why."

*Rombach* v. *Chang*, 355 F.3d 164, 175 (2d Cir. 2004).  "[W]here plaintiffs contend

defendants had access to contrary facts, they must specifically identify the reports or

statements containing this information."  *In re Corning Sec. Litig.*, 01-CV-6580-CJS,

2004 WL 1056063, at *12 (W.D.N.Y. Apr. 9, 2004) (quoting *Novak* v. *Kasaks*, 216 F.3d

300, 309 (2d Cir. 2000)).  Plaintiffs have impermissibly utilized a "pleading technique

[that] couple[s] a factual statement with a conclusory allegation of fraudulent intent,"

rather than "allege facts and circumstances that would support an inference that

defendants knew of specific facts that are contrary to their public statements."  *Rombach*,

355 F.3d at 176.[6]

            In essence, the Complaint alleges that Vodafone recognized an

impairment, *ergo*, there must have been fraud, and reflexively asserts without any

purported substantiation that Vodafone deliberately delayed disclosure of the

impairment.[7]  But the "[m]ere allegation[] that statements in one report should have been

made in earlier reports do[es] not make out a claim of securities fraud."  *Acito* v.

---

[6]  For the same reasons, the Complaint's allegations regarding Vodafone's November 15, 2005 disclosures concerning its financial results and potential payments of possible tax liabilities do not state a claim for fraud.  The repeated conclusory allegation that "Vodafone knew from discussions and interactions with tax authorities that it would have to make multi-billion dollar cash payments beginning in F06 or F07" (*see*, *e.g*., Compl. ¶ 78(i)) does not provide the requisite specific basis to contend that Defendants improperly delayed those disclosures or made prior disclosures on those subjects that they knew to have been false (or misleading) when made.  Nor does it provide any basis to contend that Defendants failed to make necessary disclosures.

[7]  Certain of Plaintiffs' allegations actually demonstrate that Vodafone acted in good faith and with due care by announcing the impairment write-down on February 26, 2006 (Compl. ¶¶ 14, 124)—even before Vodafone had reached a definitive calculation as to the amount of the impairment and more than a month in advance of its financial reporting for the fiscal year ended March 31, 2006.  *See Rombach*, 355 F.3d at 177 ("If anything, the fact that [defendant] voluntarily chose to issue a press release earlier than its standard year-end reporting . . . undercuts the allegation that defendants were acting recklessly.") (quoting *In re Nokia Corp. Sec. Litig.*, 1998 U.S. Dist. LEXIS 4100, No. 96-CIV-3752, at *13 (S.D.N.Y. Apr. 1, 1998)).

*IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995). This observation is particularly apt where, as here, the Complaint challenges the timeliness of disclosure regarding an impairment of intangible assets—a decision that necessarily involves technical accounting judgments rendered after complex valuation analyses, not a hair-trigger reaction to unfavorable short-term events. *See* International Accounting Standard (IAS) No. 36 ("Impairment of Assets"). Plaintiffs seem to suggest—but do not clearly allege— that Vodafone's assets were somehow "impaired" for some time—although Plaintiffs do not specify how much time—before Vodafone announced the impairment. The Complaint acknowledges that Vodafone disclosed its regular impairment reviews (Compl. ¶¶ 55, 56, 92, 118), but does not allege that Vodafone either did not actually conduct those reviews or conducted them, but then lied about the results. These omissions are fatal. *In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 574 (D. Md. 2005) ("Noticeably absent from the complaint is an allegation that *once the analysis was complete*, [defendants] concluded that there was an impairment to goodwill, that the individual Defendants were aware of that conclusion, and that they, nevertheless, consciously misrepresented in their subsequent statements that it was not impaired."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 265 (S.D.N.Y. 2004) (allegation that $359 million write-down should have occurred earlier fails where plaintiffs plead no facts to indicate the charge should have been recognized earlier).

The pleading standard for the claims asserted here is clear and high: Plaintiffs must allege that "the need to write-down . . . was 'so apparent' to [the defendant] before the announcement, that a failure to take an earlier write-down amounts to fraud." *Schiller* v. *Physicians Resource Group, Inc.*, No. 3:97-cv-3158-L, 2002 WL 318441, at *14 (N.D. Tex. Feb. 26, 2002) (quoting *Coates* v. *Heartland Wireless Comm'ns, Inc.*, 100 F. Supp. 2d 417, 429 (N.D. Tex. 2000)); *In re K-tel Int'l, Inc., Sec.*

*Litig.*, 107 F. Supp. 2d 994, 1000-01 (D. Minn. 2000), *aff'd*, 300 F.3d 881 (8th Cir. 2002) (dismissing securities fraud claims where plaintiffs fail to specify amount by which assets were overvalued and the basis for asserting that the write-off was concealed). "If all that is involved is a dispute about the timing of the write-off . . . we do not have fraud; we may not even have negligence." *Fadem* v. *Ford Motor Co.*, 352 F. Supp. 2d 501, 512 (S.D.N.Y. 2005), *aff'd*, 157 Fed. Appx. 398 (2d Cir. 2005) (quoting *DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

   Although Plaintiffs allege that they interviewed former Vodafone employees in preparing the Complaint (Compl. at 1), Plaintiffs do not identify any internal report or communication that even suggests that Vodafone's management was aware of the need for an impairment prior to the time the impairment was announced, relying instead on information that was publicly available beginning in 2002. (Compl. ¶ 139; *see also* ¶ 141 ("once the German results were even the slightest bit disappointing, impairment would exist"); ¶ 142 ("The German telecom market did nothing but deteriorate from the time of the Mannesmann acquisition through 2004, and ultimately through 2005.")). The broad assertions in Paragraphs 139 through 143 about "lack of growth" and "disappointing results" make no attempt to allege when and in what amount the impairment should have been taken or why Vodafone should have reached earlier the technical accounting judgment that certain of its goodwill was impaired. Those allegations do not suggest, let alone plead with specificity, that Defendants had concluded, but deliberately withheld from the public, that Vodafone's assets had been impaired well before February 2006 (*see*, *e.g.*, *Acterna*, 378 F. Supp. 2d at 573-74), or that the need for a write-down was obvious and ineluctable. *See*, *e.g.*, *Schiller*, 2002 WL 318441, at *14; *Caiafa* v. *Sea Containers Ltd.*, 525 F. Supp. 2d 398, 410-11 (S.D.N.Y.

2007) (allegations of fraud fail where plaintiffs do not allege how a write-down

demonstrates that prior statements were misleading). [8]

## III.    The Amended Complaint Fails To Plead Materially False Statements Or Omissions That Are Actionable Under Section 10(b).

            "To state a cause of action under § 10(b) and Rule 10b-5, [a] plaintiff must

allege that defendants:  (1) in connection with a purchase or sale of securities; (2) with

scienter; (3) made a material false representation or omitted to disclose material

information; (4) upon which plaintiff relied; (5) proximately causing plaintiff to suffer

injury."  *City of Sterling Heights Police & Fire Ret. Sys.* v. *Abbey Nat'l PLC*,

423 F. Supp. 2d 348, 355 (S.D.N.Y. 2006) (quoting *Lentell* v. *Merrill Lynch & Co.*, 396

F.3d 161, 172 (2d Cir. 2005)).  Even if the Complaint could be construed to assert some

form of claim (which it could not), that claim would sound in corporate mismanagement,

which is not cognizable under the federal securities laws.  Furthermore, various of the

statements in the Complaint are not actionable because they:  (i) are forward-looking

statements that are subject to the PSLRA-established safe harbor; (ii) attack assertions

that amount, at most, to inactionable puffery; or (iii) seek to hold Defendants liable for

statements allegedly made by third parties.

---

[8]    Moreover, if the information alleged in Paragraphs 139 to 143 of the Complaint had demonstrated unequivocally the need for an impairment *during the class period*, it similarly would have put Plaintiffs on inquiry notice of the alleged basis of their claims as early as 2002, and no later than 2004, the time when, according to Plaintiffs, that information became publicly available.  *See*, *e.g.*, *Exxon Mobil*, 387 F. Supp. 2d at 416-20; *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 692-93 (S.D.N.Y. 2000); *Dietrich* v. *Bauer*, 76 F. Supp. 2d 312, 343-44 (S.D.N.Y. 1999).  Taken to their logical extension, Plaintiffs' assertions would have required Plaintiffs to file this action within the two-year statute-of-limitations provided by 28 U.S.C. § 1658(b)(1)—well before the commencement of this action in November 2007. The issue of inquiry notice may properly be resolved on a motion to dismiss, *Salinger* v. *Projectavision, Inc.*, 934 F. Supp. 1402, 1408-09 (S.D.N.Y. 1996), particularly where "the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint . . ." *LC Capital Partners, L.P.* v. *Frontier Ins. Group.*, 318 F.3d 148, 156 (2d Cir. 2003).

A.     **Plaintiffs' Allegations Regarding Defendants' Supposed Corporate Mismanagement Are Not Actionable Under Section 10(b).**

Even if true, Plaintiffs' allegations that Vodafone overpaid for its acquisitions and should have realized sooner that increased competition supposedly would erode the carrying values of the German, Italian and Japanese operations reflect merely disagreements with Defendants' judgments concerning the long-term values of certain assets and, thus, amount, at most, to assertions of corporate mismanagement. Such claims do not sound in fraud.  *See*, *e.g.*, *Santa Fe Indus.*, *Inc.* v. *Green*, 430 U.S. 462, 479-80 (1977) (finding that § 10(b) does "not seek to regulate transactions which constitute no more than internal corporate mismanagement"); *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 379 (S.D.N.Y. 2007) ("bad business decisions are not actionable under the securities laws").  Plaintiffs cannot bootstrap these non-actionable allegations into claims for securities fraud by alleging failure to disclose mismanagement because any "general duty to disclose corporate mismanagement . . . has been rejected." *In re AXIS Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 587 (S.D.N.Y. 2006) (quoting *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 471 (S.D.N.Y. 2006)).  Ultimately, "even a delinquent write-down of the impaired assets, without anything more, does not state a claim of securities fraud, stating at best a bad business decision." *In re ICN Pharms., Inc., Sec. Litig.*, 299 F. Supp. 2d 1055, 1065 (C.D. Cal. 2004), *aff'd*, *Bedford Oak Partners, LP* v. *ICN Pharm. Inc.*, 184 Fed. Appx. 672 (9th Cir. 2006); *see also Serabian* v. *Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir. 1994) ("the securities laws do not guarantee sound business practices") (internal quotation marks omitted) (quoting *DiLeo*, 901 F.2d at 627).[9]

---

[9]     Furthermore, "[a]llegations of GAAP violations or accounting irregularities," such as those alleged in Paragraph 144 of the Complaint, "standing alone, are insufficient to state a securities fraud claim." *In re Prestige Brands Holding, Inc.*, No. 05 Civ. 06924 (CLB), 2006 WL 2147719, at *5 (S.D.N.Y. July 10, 2006).  Additionally, the Complaint's unsupported

> **B.    Many Of The Statements Challenged In The Complaint Are Not Of Types That Are Actionable Under The U.S. Securities Laws.**

In addition to its other deficiencies, various statements in the Complaint labeled as purportedly fraudulent cannot, by their very nature, give rise to liability.[10]

> **1.    Forward-Looking Statements**

The PSLRA insulates defendants from liability for forward-looking statements even if those statements prove to be incorrect.  *See* 15 U.S.C. § 77z-2. Specifically, a forward-looking statement cannot provide the basis for liability where (1) the statement is accompanied by meaningful cautionary statements identifying important facts that could cause actual results to differ materially from those in the forward-looking statement, or (2) the statement was made without knowledge that the statement was false or misleading.  *See* 15 U.S.C. §§ 78u-5(c)(1)(A)(i); 78u-5(c)(1)(B)(ii).  Absent a showing of actual knowledge of falsity, there is no liability under the second prong, even in the absence of cautionary language.  *See In re Indep. Energy Holdings Plc. Sec. Litig.*, 154 F. Supp. 2d 741, 755 (S.D.N.Y. 2001).

The statements and portions of statements in the Complaint that relate to Vodafone's future business and financial prospects are forward-looking statements within the meaning of the PSLRA.  (Compl. ¶¶ 51, 52, 54, 60, 71, 72, 85, 89-90; Razza Decl.

---

assertions that Vodafone failed to "maintain accurate records" (Compl. ¶ 150) and "implement procedures reasonably designed to prevent accounting irregularities" (*id.* at ¶ 151) in violation of Section 13(b)(2) of the Securities Exchange Act of 1934, provide "no explanation" as to "why the certification [as to proper controls and procedures] was fraudulent and therefore fail[] to satisfy the Rule 9(b) requirement that fraud must be pled with particularity."  *In re Elan Corp. Sec. Litig.*, No. 05 Civ. 2860 (RJH), 2008 WL 839744, at *28 n.32 (S.D.N.Y. Mar. 27, 2008); *cf. Acterna*, 378 F. Supp. 2d at 583 (main accounting principle relating to goodwill impairment analyses under U.S. GAAP "calls for a 'complicated analysis'").

[10]    To assist the Court in navigating through the labyrinthine Complaint, Defendants have attached as Exhibit A to the Declaration of Jordan T. Razza, executed on June 6, 2008 ("Razza Decl.") a chart categorizing certain of the allegedly fraudulent statements (or portions of those statements) and identifying those statements as to which the Complaint offers no contrary allegations, as well as the grounds referenced in this section upon which other statements alleged in the Complaint are not actionable in this case.

Ex. A).  Each of these statements was alleged to have been included in press releases or

other public filings that contained the detailed cautionary language designed to qualify

the statement for the PSLRA's safe harbor.[11]  For example, the cautionary language in

Vodafone's 2004 Annual Report warned investors of various factors that could cause

Vodafone's actual results to differ materially from those expressed or implied by

Vodafone's forward-looking statements.  Those factors directly addressed many of the

alleged nondisclosures about which Plaintiffs now complain, including, among others,

the risks of:

- Greater than anticipated competitive activity requiring changes in pricing models and/or new product offerings or resulting in higher costs of acquiring new customers or providing new services;

- Lower than expected impact of GPRS, 3G, Vodafone live! and other new or existing products, services or technologies on the Group's future revenues, cost structure and capital expenditure outlays;

- Changes in the regulatory framework in which the Group operates, including possible action by European or US NRAs or by the European Commission regulating rates the Group is permitted to charge;

- Timing of tax payments relating to the resolution of open issues.

(*See* Vodafone's 2004 Annual Report (Razza Decl. Ex. B) (Compl. ¶¶ 51, 52, 54).)

Vodafone's other forward-looking statements (Compl. ¶¶ 60, 71, 72, 85,

89-90), also were accompanied by cautionary language, as well as by references to

Cautionary Statements and Risk Factors accompanying Vodafone's Annual Reports.

---

[11]   *See*, *e.g.*, Vodafone's  Annual Report on Form 20-F for the fiscal year ended Mar. 31, 2004, at 20-22 (Compl. ¶¶ 51, 52, 54) (Razza Decl. Ex. B); Vodafone's Form 6-K attaching its press release dated Sept. 27, 2004, entitled "Vodafone Analyst and Investor Day" (Compl. ¶ 60) (Razza Decl. Ex. C); Vodafone's Form 6-K attaching its press release dated Nov. 10, 2004, entitled "Global Launch of Vodafone Live! With 3G" (Compl. ¶ 71) (Razza Decl. Ex. D); Vodafone's Form 6-K attaching its Interim Results For the Six Months to 30 Sept. 2004, dated Nov. 17, 2004 (Compl. ¶ 72) (Razza Decl. Ex. E); Vodafone's Form 6-K attaching its press release dated May 24, 2005, entitled "Vodafone Announces Full Year Results" (Compl. ¶ 85) (Razza Decl. Ex. F); Vodafone's Annual Report on Form 20-F for the fiscal year ended Mar. 31, 2005, at 24-27 (Compl. ¶¶ 89-90) (Razza Decl. Ex. G); Vodafone's Form 6-K attaching its press release dated Nov. 15, 2005, entitled "Vodafone Announces Results for the Six Months to 30 Sept. 2005" (Compl. ¶ 117) (Razza Decl. Ex. H).

These disclaimers sufficiently alerted investors to the types of risks that Plaintiffs now claim were not disclosed.  *See*, *e.g.*, *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 586 (S.D.N.Y. 2007) (no liability for earnings projections alleged to be "too bullish" where projections were accompanied by cautionary language); *Gavish* v. *Revlon, Inc.*, No. 00 Civ. 7291 (SHS), 2004 WL 2210269, at *21 & n.4, *22 & n.9 (S.D.N.Y. Sept. 30, 2004) (forward-looking statements provide no basis for liability).

Furthermore, where, as here, a plaintiff proceeds on a "fraud on the market theory," the defendants' cautionary statements "must be treated as if attached to every one of [their] oral and written statements.  Under this reasoning, the Court must consider whether any cautionary language provided by the defendants at any time sufficiently warned of the risk of which plaintiffs complain."  *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2005 WL 2277476, at *13 (E.D.N.Y. Sept. 19, 2005) (internal citations and quotations omitted); *see also GSC Partners CDO Fund* v. *Washington*, 368 F.3d 228, 243 n.3 (3d Cir. 2004) (cautionary language need not actually accompany the alleged misrepresentation).  Thus, Plaintiffs' allegation that certain of Vodafone's statements lacked cautionary language (Compl. ¶ 169) is of no import.

But even if Vodafone had never at any time issued a word of caution to its investors, the statements challenged in the Complaint would still not be actionable because Plaintiffs have failed to plead with the requisite specificity that the statements were made with "actual knowledge" that they were materially false or misleading. 15 U.S.C. § 78u-5(c)(1)(B); *In re Eastman Kodak Co. Sec. Litig.*, No. 6:05-cv-6326-MAT, 2006 WL 3149361, at *4 (W.D.N.Y. Nov. 1, 2006) ("An even more stringent scienter requirement applies to forward-looking statements, such as earnings projections, where plaintiffs must plead facts to support the strong inference that the speaker had actual knowledge that the statement was false or misleading when made.").  Plaintiffs'

conclusory reiterations that defendants "knew or recklessly disregarded" a boilerplate list of contentions falls far short of what is required to demonstrate actual knowledge of falsity or even recklessness. *See*, *e.g.*, *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041 (DLC), 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000) (dismissing complaint that did not "allege the existence of any specific documents or other information contradicting their public statements that were available to [them]").

### 2.    Puffery

The statements identified as "puffery" in Exhibit A, including statements about Vodafone's "highly successful year," "excellent overall operating performance," "solid financial results," "strong progress," "organizational efficiency," "high quality [3G] service" and "future growth opportunities" constitute general or vague characterizations of the financial information that Vodafone had reported publicly or expressions of optimism about Vodafone's future prospects and, thus, are not actionable as fraud under the federal securities laws.[12]  *See*, *e.g.*, *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 397 (S.D.N.Y. 2006)*; see also In re XM Satellite Radio Holdings Sec. Litig.*, 479 F. Supp. 2d 165, 179 (D.D.C. 2007).  Such statements are simply "not the type of statement upon which a reasonable investor would rely in considering the total mix of facts available, and courts routinely dismiss securities fraud claims based on comparable puffery." *Id*. at 180 (citations and internal quotations omitted); *see also Shaw* v. *Digital Equip. Corp.*, 82 F.3d 1194, 1217 (1st Cir. 1996) ("[C]ourts have demonstrated a willingness to find immaterial as a matter of law a certain kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace—loosely optimistic statements that are so vague, so lacking

---

[12]    *See*, *e.g.*, Am. Compl. ¶¶ 51, 52, 58, 62, 66, 70, 71, 72, 73, 79, 85, 86, 89, 90, 95, 100, 101, 103, 117, 118, 121, 122.  *See also* Razza Decl., Ex. A.

in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available."). General statements of optimism, "even if arguably misleading, do not give rise to a federal securities claim because they are not material." *Advanta*, 180 F.3d at 538.[13]

### 3.    Third Party Statements

The Complaint includes lengthy quotations from research analyst reports and media sources that neither constitute statements of, nor properly are attributable to, any of the Defendants.[14]  These statements, or portions of them, identified in Exhibit A cannot give rise to liability under the federal securities laws.  "Under the law of this circuit, plaintiffs may state a claim against corporate officials for false and misleading information disseminated through analysts' reports by alleging that the officials either: (1) 'intentionally fostered a mistaken belief concerning a material fact' that was incorporated into reports; or (2) adopted or placed their 'imprimatur' on the reports." *Novak*, 216 F.3d at 314.  The Complaint fails to allege the basis on which the statements cited in this section satisfy either prong of this standard.  *See*, *e.g.*, *In re Authentidate Holding Corp. Sec. Litig.*, No. 05 Civ. 5323 (LTS) (DFE), 2006 WL 2034644, at *5 (S.D.N.Y. July 14, 2006) (no liability where plaintiffs "merely assert in a conclusory fashion, without specific factual support, that a report by an analyst was based on Defendants' materially false and misleading statements and that Defendants' alleged misrepresentations were directly incorporated into the report and formed the basis for the analyst's high projections").

---

[13]  A corollary to the "puffery" doctrine is the principle that corporate officials have no duty to couch their disclosures in "pejorative terms."  *In re XM Satellite Radio Holdings*, 479 F. Supp. 2d at 181.  The Second Circuit recognizes that "companies must be permitted to operate with a hopeful outlook," and that, as a result, executives "are not required to take a gloomy, fearful or defeatist view of the future."  *Rombach*, 355 F.3d at 174.

[14]  *See* Compl. ¶¶ 59, 63-65, 67, 80-83, 87, 88, 96-98.  *See also* Exhibit A.

## IV.    The Complaint Fails Adequately to Allege Scienter.

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required [fraudulent intent]." 15 U.S.C. § 78u-4(b)(2); *see also Caiafa*, 525 F. Supp. 2d at 412.  In determining whether a plaintiff's allegations satisfy the "strong inference" standard, "a court must consider plausible nonculpable explanations for the defendant's conduct . . .  [T]he inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007).  A plaintiff may establish the requisite strong inference of scienter with particularized allegations showing either (1) that a defendant had the "motive and opportunity" to commit fraud, or (2) alleging "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Rombach*, 355 F.3d at 176.  The Complaint here fails on both counts.

### A.    The Complaint's Motive Allegations Are Legally Insufficient.

It is well-settled that allegations that defendants "were motivated to defraud the public because an inflated stock price would increase their compensation [are] without merit." *Kalnit* v. *Eichler*, 264 F.3d 131, 139-40 (2d Cir. 2001) (quoting *Acito*, 47 F.3d at 52).  Thus, Plaintiffs' assertions that the Individual Defendants were motivated to commit fraud because their compensation was "directly tied to an increase in the price of the Company stock" (Compl. ¶ 42; *see also* ¶¶ 26) are insufficient to allege the requisite motive.

Plaintiffs' "insider trading" allegations are likewise inadequate. "[E]xecutive stock sales, standing alone, are insufficient to support a strong inference of fraudulent intent." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004).  No inference of scienter can be drawn from alleged insider trading,

unless a plaintiff can establish that the trading activity is "unusual." *Astrazeneca*, slip op. at 30; *Acito*, 47 F.3d at 54; *In re LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 354 (S.D.N.Y. 2005); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 444 (S.D.N.Y. 2005). Whether insider sales are unusual depends on various factors, including the amount of profit from sales, the portion of the holdings sold, the change in volume of insider sales and the number of insiders selling. *See*, *e.g.*, *Rothman* v. *Gregor*, 220 F.3d 81, 94-95 (2d Cir. N.Y. 2000). Individual trading history also is relevant. *LaBranche*, 405 F. Supp. 2d at 354-55 (no scienter where plaintiffs fail to allege: "(1) the portion of stockholdings sold by each Individual Defendant, (2) any relevant change in volume of insider sales during the Class Period, or (3) the total numbers of insiders selling."); *BISYS*, 397 F. Supp. 2d at 444-45 (insider sales not unusual when "distributed fairly evenly throughout the Class Period, not clustered at its end, when insiders theoretically would have rushed to cash out before the fraud was revealed and stock prices plummeted" and there was no indication that "defendants' sales during the Class Period deviated from their patterns of sales before and after the Class Period").

Plaintiffs' allegations of "insider trading" by seven Vodafone executives (Compl. ¶¶ 26-27, 30-34),[15] are insufficient to demonstrate scienter for several reasons:

*First*, Plaintiffs focus on "proceeds" (which reflect the gross amount received as a result of the sales, *not* the net profits to the individuals) ranging from $1.8 million to $7.7 million. "[G]ross proceeds, standing alone, tell [the court] very little." *BISYS*, 397 F. Supp. 2d at 445; *In re Take-Two Interactive Sec. Litig.*, No. 06 Civ. 803 (SWK), 2008 WL 1757823, at *20 (S.D.N.Y. Apr. 16, 2008) ("A finding of motive . . . cannot be predicated solely upon the gross proceeds of alleged insider stock sales")

---

[15]     The seven individuals are Messrs. Sarin, Bamford, Donovan, von Kuczkowski, Geitner, Harper and Sir Julian Horn-Smith.

(citing *In re eSpeed, Inc. Sec. Litig*., 457 F. Supp. 2d 266, 290 (S.D.N.Y. 2006)). In any event, prior precedent establishes that proceeds in the range of those alleged here generally are insufficient to establish scienter. *See*, *e.g*., *San Leandro Emergency Med. Group Profit Sharing Plan* v. *Philip Morris Cos., Inc.*, 75 F.3d 801, 813-14 (2d Cir. 1996) ($2 million profit insufficient); *Rothman*, 220 F.3d at 94 (2d Cir. 2000) ($20 million return insufficient).

      *Second*, Plaintiffs do not allege that the timing of any of the stock sales at issue was at all unusual.  Indeed, *all* of the stock sales referenced in the Complaint occurred between December 2004 and August 2005, long before the purported "corrective disclosures."  *In re Keyspan Corp. Sec. Litig.,* 383 F. Supp. 2d 358, 385 (E.D.N.Y. 2003) (two-month gap between sale and release of negative information not strongly suspicious in light of other factors); *see also Astrazeneca,* slip op. at 30-31.

      *Third*, Plaintiffs allege that the Individual Defendants sold various purported percentages of their total holdings,[16] but do not suggest that the overall volume of the Individual Defendants' holdings changed over the class period or that the trades were out of line with those executives' ordinary trading practices, and Plaintiffs fail to describe any of Defendants' *acquisitions* during the class period.  *Fishbaum* v. *Liz Claiborne, Inc.*, 189 F.3d 460, 1999 WL 568023, at *4 (2d Cir. 1999) (no scienter where all but one of defendants held more shares at end of the class period than at beginning); *Take-Two Interactive,* 2008 WL 1757823, at *20-21 (no scienter where complaint failed, *inter alia*, to specify the volume of defendants' insider sales during relevant period of time as compared to other periods); *Sina*, 2006 WL 2742048, at *12 n.14 (noting that plaintiffs had sought to avoid conclusion that defendants owned more stock at end of class period by listing sales but not purchases).

---

[16]  Defendants dispute the accuracy of these characterizations.

In fact, the holdings of Vodafone's directors (including various Individual Defendants) either remained constant or increased from April 1, 2005 to March 31, 2006. *See* Form 20-F, Table of Beneficial Interests, at p. 69 (Razza Decl. Ex. I). Significantly, that table demonstrates that the holdings of Vodafone's CEO increased during that period, while the holdings of Vodafone's Chairman remained constant. *Id.*; *eSpeed*, 457 F. Supp. 2d at 289 (absence of sales by CEO and CFO during class period undermines plaintiffs' motive allegations). The Complaint also fails to mention that Vodafone's CEO purchased 100,000 shares of Vodafone ordinary stock on December 21, 2005 (between the November 15, 2005 and February 27, 2006 alleged "remedial" disclosures)—a fact that was reported in publicly available regulatory filings and of which the Court may take judicial notice.[17] *In re Regeneron Pharms., Inc. Sec. Litig.*, 03 Civ. 3111 (RWS), 2005 WL 225288, at *22 (S.D.N.Y. Feb. 1, 2005) ("It is well settled that such an action—*i.e.*, the purchase of additional company shares during the class period—is inconsistent with an intent to commit fraud.") (citing *In re Symbol Techs. Class Action Litig.*, 950 F. Supp. 1237, 1245 (E.D.N.Y. 1997)).[18]

### B.    The Complaint Fails to Plead Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness.

Plaintiffs' allegations of recklessness are likewise insufficient to plead scienter. A plaintiff can plead conscious misbehavior or recklessness by pleading facts

---

[17]    *Vodafone Group Plc - Director/PDMR Shareholding*, Regulatory News Service (disseminated by the London Stock Exchange), Dec. 22, 2005 (Razza Decl., Ex. J).

[18]    Courts routinely consider defendants' stock purchases as part of a scienter analysis in the context of a motion to dismiss. *See*, *e.g.*, *Fishbaum*, 1999 WL 568023, at *4 (noting that "inferences of scienter can be undermined when an insider's sales of stock are offset by even larger stock acquisitions during the relevant time period"); *Bristol-Myers Squibb*, 312 F. Supp. 2d at 561 ("the Individual Defendants, in almost every instance, *increased* their [ ] holdings during the Class Period—a fact wholly inconsistent with fraudulent intent") (emphasis in original); *see also Sina*, 2006 WL 2742048, at *11 ("the Court is entitled to take judicial notice of [ ] filings with the SEC, enabling us to conclusively determine that the Individual Defendants' trading activity during the Class Period was not at all unusual when compared with their prior activity").

that create a "strong inference" that a defendant (1) "engaged in deliberately illegal behavior"; (2) "knew facts or had access to information suggesting that [its] public statements were not accurate"; or (3) "failed to check information [it] had a duty to monitor." *Novak*, 216 F.3d at 311.  Recklessness has been defined as conduct that "is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *In Re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000).  Where, as here, the complaint fails adequately to plead scienter based on motive, "the strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater."  *Kalnit*, 264 F.3d at 142; *Astrazeneca,* slip op. at 33.

Generalized allegations of defendants' knowledge and access to information are insufficient as a matter of law to establish conscious misbehavior or recklessness.  *See In re Aegon N.V. Sec. Litig*., No. 03 Civ. 0603 (RWS), 2004 WL 1415973, at *17 (S.D.N.Y. June 23, 2004) (allegations that "Defendants had access to adverse undisclosed information because of their senior positions with the company . . . are insufficient to establish scienter.").  Similarly, a plaintiff may not infer scienter from the dissemination of an allegedly contrary statement some weeks or months after the issuance of an allegedly false statement.  *See In re Duane Reade Sec. Litig.*, No. 02 Civ. 6478 (NRB), 2003 WL 22801416, at *10 (S.D.N.Y Nov. 25, 2003) (allegations that the final results for the second quarter "must have been apparent throughout the quarter" are insufficient to plead scienter).

The Complaint here falls far short of even suggesting recklessness.  Conspicuously absent from Plaintiffs' boilerplate incantations of information or events allegedly "known" or "recklessly disregarded" by Defendants is *any* reference to internal

documents including, or Vodafone personnel asserting, information that conflicted with Vodafone's public disclosures or otherwise suggesting that Defendants deliberately withheld information about Vodafone's financial condition and prospects from the public. *See Marcus* v. *Frome*, No. 02 Civ. 6192 JGK, 2003 WL 21800966, at *6 (S.D.N.Y. Aug. 5, 2003) (no recklessness where complaint "does not mention any particular document or information that the defendants had access to, and does not allege that the information contained in those documents, whatever they were, was inconsistent [with] or contradicted the information that formed the basis of the defendants' public statements"); *Sotheby's Holdings, Inc*., 2000 WL 1234601, at *7 (dismissing complaint that did not "allege the existence of any specific documents or other information contradicting their public statements that were available to [them]").[19]

## V.    Plaintiffs Fail to State a Claim for Control Person Liability Under Section 20(a).

In order to establish a *prima facie* claim of control person liability under Section 20(a), a plaintiff must show:  "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation." *Harrison* v. *Rubenstein*, No. 02 Civ. 9356 (DAB), 2007 WL 582955, at *19 (S.D.N.Y. Feb. 26, 2007) (internal quotation omitted).  Because Plaintiffs have failed sufficiently to plead a violation of Section 10(b) or Rule 10b-5 or culpable participation by Defendants in any such violation, Plaintiffs cannot establish a violation of Section 20(a).  *See*, *e.g.*, *Astrazeneca,* slip op. at 38.

---

[19]    Furthermore, the Complaint includes no scienter allegations sufficient to support the liability of any individual defendant.  The PSLRA's scienter requirement cannot be satisfied by means of the "group pleading" doctrine.  *BISYS*, 397 F. Supp. 2d at 440.  Conclusory allegations concerning a corporate officer's "access" to contradictory information do not establish scienter.  *Yukos*, 2006 WL 3026024, at *20.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the Amended Complaint in its entirety, on the merits and with prejudice, and grant to Defendants such other and further relief as the Court deems just and proper.

Dated:   New York, New York          Respectfully submitted,
           June 6, 2008

                                   /s/ Gandolfo V. DiBlasi
                                   Gandolfo V. DiBlasi (GD-5913)
                                   Theodore Edelman (TE-4678)
                                   Jordan T. Razza (JR-5877)
                                   SULLIVAN & CROMWELL LLP
                                   125 Broad Street
                                   New York, New York  10004-2498
                                   Tel:  (212) 558-4000
                                   Fax:  (212) 558-3588

                                   *Counsel for Defendants*