# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE CITY OF EDINBURGH COUNCIL ON   :
BEHALF OF THE LOTHIAN PENSION     :
FUND, On Behalf of Itself and All Others   :
Similarly Situated,                     :
                                     :
          Plaintiffs,          :
                                     :   Civil Action No. 07 Civ 9921 (PKC)
          v.               :
                                     :
VODAFONE GROUP PUBLIC LIMITED    :
COMPANY, et al.,                :
                                     :
          Defendants.       :
                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

Gandolfo V. DiBlasi (GD-5913)
Theodore Edelman (TE-4678)
Jordan T. Razza (JR-5877)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-4000
Fax:  (212) 558-3588

*Counsel for Defendants*

August 25, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

ARGUMENT ............................................................................................................................... 2

I.     The Complaint Fails to Plead Fraud With Sufficient Particularity ......................... 2

     A.     The Complaint Fails to Allege with Specificity that Defendants Deliberately Delayed Recognition of the Impairment Charge. .................... 3

     B.     The Complaint Fails to Allege that Vodafone Improperly Delayed Disclosure of Potential Tax Liabilities. ........................................................ 7

     C.     Plaintiffs' Failure to Plead, Instead of Merely Assume, Defendants' Knowledge of the Supposed Falsity of Vodafone's Statements Undermines Plaintiffs' Contention that those Statements Are Actionable. ................................................................................................. 9

II.     Plaintiffs Fail Adequately to Allege Scienter. ....................................................... 9

     A.     Plaintiffs Fail to Allege Recklessness. ....................................................... 10

     B.     Plaintiffs Fail Sufficiently to Allege Motive. ............................................ 11

III.     Lothian's "New Evidence" of U.S. Conduct is Insufficient to Establish Subject Matter Jurisdiction. .................................................................................. 12

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigation*,
 398 F. Supp. 2d 244 (S.D.N.Y. 2005)......................................................................5

*In re Advanta Corp. Sec. Litig.*,
 180 F.3d 525 (3d Cir. 1999)...................................................................................7

*In re Aegon N.V. Sec. Litigation*,
 No. 03 Civ. 0603 (RWS), 2004 WL 1415973 (S.D.N.Y. June 23, 2004) ................9

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litigation*,
 324 F. Supp. 2d 474 (S.D.N.Y. 2004)...................................................................10

*In re Bayer AG Sec. Litigation*,
 423 F. Supp. 2d 105 (S.D.N.Y. 2005)...................................................................13

*In re Burlington Coat Factory Sec. Litigation*,
 114 F.3d 1410 (3d Cir. 1997)..................................................................................9

*Carpenters Health & Welfare Fund* v. *Coca-Cola Co.*,
 321 F. Supp. 2d 1342 (N.D. Ga. 2004) ...................................................................6

*City of Sterling Heights Police & Fire Ret. Sys.* v. *Abbey Nat'l, PLC*,
 423 F. Supp. 2d 348 (S.D.N.Y. 2006)...................................................................11

*Davidco Investor, LLC* v. *Anchor Glass Container Corp.*,
 No. 8:04-cv-2561-T-24 EAJ, 2006 WL 547989 (M.D. Fla. Mar. 6, 2006) .........5, 6

*Endovasc, Ltd.* v. *J.P. Turner & Co., LLC*,
 169 Fed. Appx. 655 (2d Cir. 2006).........................................................................2

*In re eSpeed, Inc. Sec. Litigation*,
 457 F. Supp. 2d 266 (S.D.N.Y. 2006)...................................................................11

*In re Exxon Mobil Corp.*,
 387 F. Supp. 2d 407 (D.N.J. 2005) .........................................................................7

*Exxon Mobil Corp.* v. *Allapattah Serv., Inc.*,
 545 U.S. 546 (2005)..............................................................................................14

*Fecht* v. *Price Co.*,
 70 F.3d 1078 (9th Cir. 1995) .................................................................................12

*GlenFed Sec. Litigation*,
 42 F.3d 1541 (9th Cir. 1994) .................................................................................12

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*In re Global Crossing, Ltd. Sec. Litigation,*
  322 F. Supp. 2d 319 (S.D.N.Y. Mar. 23, 2004) ..................................................................5

*In re Literary Works in Elec. Databases Copyright Litigation,*
  509 F.3d 116 (2d Cir. 2007) ...............................................................................................14

*Marcus* v. *Frome,*
  275 F. Supp. 2d 496 (S.D.N.Y. 2003) .................................................................................10

*In re Nat'l Australia Bank Sec. Litigation,*
  No. 03 Civ. 6537 (BSJ), 2006 WL 3844465 (S.D.N.Y. Oct. 25, 2006) ..................................15

*Novak* v. *Kasaks,*
  216 F.3d 300 (2d Cir. 2000) ..................................................................................................9

*Ortman* v. *Stanray Corp.,*
  371 F. 2d 154 (7th Cir. 1967) .............................................................................................14

*In re Oxford Health Plans, Inc. Sec. Litigation,*
  187 F.R.D. 133 (S.D.N.Y. 1999) .........................................................................................12

*Provenz* v. *Miller,*
  102 F.3d 1478 (9th Cir. 1996) ............................................................................................12

*Reading Int'l, Inc.* v. *Oaktree Capital Mgmt. LLC,*
  317 F. Supp. 2d 301 (S.D.N.Y. 2003) ...................................................................................3

*In re Rhodia S.A. Sec. Litig.,* 531 F. Supp. 2d 527 (S.D.N.Y. 2007) ............................................13

*Rubinstein* v. *Collins,*
  20 F.3d 160 (5th Cir. 1994) ................................................................................................12

*In re Scor Holding (Switz.) AG Litigation,*
  537 F. Supp. 2d 556 (S.D.N.Y. 2008) ..........................................................................14, 15

*Segal v. Gordon,*
  467 F.2d 602 (2d Cir. 1972) .................................................................................................4

*Selbst* v. *McDonald's Corp.,*
  No. 04 C2422, 2005 WL 2319936 (N.D. Ill. Sept. 21, 2005) ..................................................7

*In re Silicon Graphics Sec. Litigation,*
  183 F.3d 970 (9th Cir.1999) ...............................................................................................12

*In re Sotheby's Holdings, Inc.,*
  No. 00 Civ 1041 (DLC), 2001 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ...............................10

## TABLE OF AUTHORITIES

*(continued)*

Page(s)

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital, Inc.*,
    531 F.3d 190 (2d Cir. 2008)...................................................................10

*Tri Star Farms Ltd.* v. *Marconi, Plc*,
    225 F. Supp. 2d 567 (W.D. Pa. 2002)...................................................13

*Vision Specialty Food Prods.* v. *Ultimate Gourmet, L.L.C.*,
    01 Civ. 3497 (LMM), 2001 WL 1506008 (2d Cir. Nov. 26, 2001) ...........................................4

*In re Vivendi Universal, S.A.*,
    No. 02 Civ. 5571 (RJH), 2004 WL 2375830 (S.D.N.Y. Oct. 22, 2004)..................................14

*In re Winstar Commc'ns*,
    No. 01 CV 3014 (GBD) 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) ...................................10

*In re Yukos Oil Co. Sec. Litigation*,
    No. 04-5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006)....................................13

## STATUTES & RULES

28 U.S.C. § 1658(b) ...................................................................................3

28 U.S.C. § 1658(b)(1) ..............................................................................4

Federal Rule of Civil Procedure 9(b)........................................................1, 5

## DOCKETED CASES

*In re Serologicals Sec. Litigation*,
    No. 1:00-CV-1025-CAP (N.D. Ga. Feb. 20, 2003) ...................................................5

Rather than refuting any of the bases established by Defendants for requiring dismissal of the Amended Complaint (the "Complaint"), Plaintiffs' Opposition brief ("Opp.") highlights the absence from the Complaint of any of the specific allegations of fraud required by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and the Private Securities Litigation Reform Act (the "PSLRA"). Indeed, Plaintiffs' Opposition carries the Complaint's failure even to specify the supposed time when Defendants should have recorded an impairment charge for certain mobile telephone assets to a new extreme: The Opposition actually offers two different alternatives, never settling on which of the two alleged timeframes is correct or why. Plaintiffs' attempt to amend the Complaint through their brief is, of course, improper (as are the other new allegations that Plaintiffs assert in their Opposition), but ultimately irrelevant, as neither Plaintiffs—nor their alleged "Confidential Informants"—provide any specific facts to show that there was any basis for an impairment charge prior to the date on which the impairment was announced. Instead, Plaintiffs exhibit profound confusion as to the basis for their claims and endeavor to compensate for the absence of the requisite particularity from the Complaint by effectively stamping their feet and repeating over and over—without legal or factual support or elaboration—that their boilerplate allegations are sufficient and that Defendants "knew" all along that Vodafone's operations were overvalued.

Plaintiffs' allegations regarding the November 2005 discussion of the possibility that Vodafone would be required to make cash payments to satisfy certain tax liabilities similarly are devoid of the necessary particularity. Those allegations are premised merely on the unsupported assertion that Vodafone must have known earlier than November 2005 that those payments were due because Vodafone had discussed those liabilities with various taxation authorities.

Plaintiffs' transparently baseless attempts to defend their pursuit of subject matter jurisdiction over the claims of the initial Lead Plaintiff ("Lothian") are premised on conclusory contentions, plainly inapplicable citations, and an unsustainable plea for the exercise of "supplemental jurisdiction."

Plaintiffs declined the opportunity to amend their Complaint after previewing Defendants' arguments in a letter to the Court in April 2008.  Instead, Plaintiffs waited until after they had reviewed Defendants' dismissal motion and then, a few days before the deadline for submitting their Opposition, sought leave to amend.  Despite the Court's denial of that request, Plaintiffs have attempted to amend anyway, by way of their brief and supporting exhibits; although their disguised supplemental pleadings fail to fill the gaping holes in the Complaint. Plaintiffs' back door amendments allege no specific fraudulent conduct, much less the U.S. conduct needed to create subject matter jurisdiction as to Lothian, a foreign purchaser of foreign shares on a foreign exchange.  Plaintiffs effectively have taken three swings, and have missed each time.  Plaintiffs have struck out.[1]

## ARGUMENT

## I.    The Complaint Fails to Plead Fraud With Sufficient Particularity.

As Plaintiffs effectively acknowledged through their unsuccessful eleventh hour request to amend, the Complaint's deficiencies require dismissal with prejudice. Notwithstanding Plaintiffs' attempts to amend the Complaint via their opposition brief and exhibits, Plaintiffs remain fundamentally confused as to the basis for (and certainly the timing relevant to) their claims and have not demonstrated at all—much less with the requisite

---

[1]    *See, e.g., Endovasc, Ltd.* v. *J.P. Turner & Co., LLC*, 169 Fed. Appx. 655, 657 (2d Cir. 2006) (a district court may properly deny leave to amend where a plaintiff has already been given "one opportunity to plead fraud with greater specificity") (citation and internal quotations omitted).

particularity—when, why and in what amount the impairment charge at issue should have occurred or the tax cash payments should have been specifically foreseen.

A.    **The Complaint Fails to Allege with Specificity that Defendants Deliberately Delayed Recognition of the Impairment Charge.**

The Complaint fails even to specify when Vodafone should have made the technical accounting judgment under the relevant accounting standards that the carrying amount of certain of Vodafone's intangible assets exceeded their recoverable amount. (*See* IAS 36 ¶ 90; SFAS No. 142 ¶¶ 19-22). In addition, Plaintiffs offer inconsistent dates in their efforts to supply that critical information (and thereby improperly amend the Complaint) through their opposition papers.[2] Plaintiffs first claim that "the impairment charge should have been taken by the start of the Class Period" (Opp. at 2). Later in their brief, however, Plaintiffs take the illogical position that, *based on the deterioration of the German telecom market in 2004 and 2005, at least part of the impairment charge should have been recognized in May 2002*, when Vodafone wrote down part of its Mannesmann assets. (Opp. at 24.) Plaintiffs' contention that Vodafone should have "written down the value of its mobile assets" in 2002 because of "the deteriorating German telecom market during 2004 and 2005" (Opp. at 24) not only impermissibly endeavors to allege fraud by hindsight, but also is internally inconsistent. Plaintiffs seek to hold Defendants liable for failing to predict in 2002 events that they contend occurred in 2004 and 2005.[3]

---

[2]    Plaintiffs' attempt to amend the Complaint in this manner would be improper even if it were not so plainly contrary to the Court's denial of their request for leave to amend that pleading. *See, e.g.*, *Reading Int'l, Inc.* v. *Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 318 n.9 (S.D.N.Y. 2003) ("plaintiffs may not amend their complaint through their opposition brief") (citation omitted).

[3]    A claim that Vodafone's financial statements prior to May 28, 2002 were materially false or misleading for failure to include the write-down challenged in this case would be barred both by the statute of limitations, 28 U.S.C. § 1658(b), and the *Order and Final Judgment* entered in prior litigation relating to Vodafone's write-down of fixed line assets in May 2002, which extinguished all claims relating to the first Mannesmann impairment. (*In re Vodafone Group Plc Sec. Litig.*, Order and Final Judgment, 02 Civ. 7592 (AKH) (S.D.N.Y. June 22, 2005)). A copy of that judgment is attached as Exhibit A to the Reply Declaration of Jordan T. Razza ("Razza Reply Decl.") submitted together with this reply memorandum.

Despite their schizophrenia as to when the impairment charge should have been recorded, Plaintiffs acknowledge that the relevant pleading standard is the one discussed in Defendant's dismissal motion:  "whether the need to write-down [the asset] . . . was 'so apparent' to [the defendant] before the announcement, that a failure to take an earlier write-down amounts to fraud."  (Opp. at 10.)  As Defendants demonstrated in their opening brief, the allegations of the Complaint do not come close to satisfying this standard.  Neither the attempted back-door amendments nor the arguments asserted in Plaintiffs' Opposition provide the missing essential facts necessary to meet this pleading burden.  Instead, Plaintiffs merely insist repeatedly, without factual elaboration, that their allegations are sufficient.  (*See*, *e.g.*, Opp. at 1, 7, 8.)  Their repetition does not provide particularity and cannot satisfy the heightened pleading requirements of the PSLRA or Rule 9(b).  *See*, *e.g.*, *Vision Specialty Food Prods.* v. *Ultimate Gourmet, L.L.C.*, 01 Civ. 3497 (LMM), 2001 WL 1506008, at *3 (2d Cir. Nov. 26, 2001) (quoting *Segal* v. *Gordon*, 467 F.2d 602, 607 (2d Cir. 1972)) ("Mere general allegations that there was fraud, corruption or conspiracy or characterizations of acts or conduct in these terms are not enough [to survive a Rule 12(b)(6) motion] no matter how frequently repeated.")[4]

---

[4]   Moreover, the Complaint alleges, in conflict with the applicable accounting standards, that Defendants somehow must have known from some unspecified time prior to the commencement of the Class Period that Vodafone should record an impairment of intangible assets because Vodafone had overpaid for Mannesmann (*see e.g.*, ¶¶ 2, 140), and that "once the German results were even the slightest bit disappointing, impairment would exist." (¶ 141.) Significantly, however, the Complaint (i) acknowledges that Vodafone conducted periodic impairment reviews, as required by the accounting standards (*see* ¶¶ 55, 56, 91, 92), and (ii) does not allege that the results of those reviews mandated a write-down or that Defendants either did not conduct the reviews correctly or disregarded the results of those reviews.  In addition, Plaintiffs do not allege that Vodafone misrepresented the acquisition costs or the financial results of the German operations or that the supposedly "disappointing" results to which the Complaint refers were not publicly disclosed.  Thus, if the need for an impairment charge had been so obvious to Vodafone, it would have been obvious to Plaintiffs as well.  Assuming for purposes of this motion only the truth of Plaintiffs' allegations, even if those allegations could be read to allege fraud (which Defendants deny), the Complaint appears to concede that Plaintiffs would have been on notice of the purported fraud since 2002 (¶¶ 139 - 143) and their claims, thus, would be barred by the statute-of-limitations.  *See* 28 U.S.C. § 1658(b)(1).

Specifically, Plaintiffs offer no real refutation as to why their allegations, which are general enough to allow Plaintiffs to recycle them for use in various securities fraud complaints, meet the requirements of Rule 9(b) and the PSLRA.  Instead, Plaintiffs attempt to dismiss the case law cited by Defendants by proclaiming—with no supporting analysis—that their Complaint, unlike the complaints in those cases, "specifically identif[ies] which portion of the defendants' public statements were alleged to be materially false and misleading" (Opp. at 7 n.4.)[5]  Declaring these statements sufficient does not make them so.[6]

Plaintiffs cannot save their Complaint by citing cases outside the impairment context (*see*, *e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 398 F. Supp. 2d 244 (S.D.N.Y. 2005) (Opp. at 9)), or others in which detailed and well-pleaded complaints were held to allege sufficiently the defendants' awareness of the need for an earlier impairment charge. *See*, *e.g.*, *Davidco Investors, LLC* v. *Anchor Glass Container Corp.*, No. 8:04-cv-2561-T-24 EAJ, 2006WL 547989, at \*16-17 (M.D. Fla. Mar. 6, 2006) (plaintiffs had adequately alleged not only that the need for an impairment was "so apparent" through a number of specific factors, including the loss of particular contracts and certain large customers that led to the closing of a production plant, but also the required timing of the write-down); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 343 (S.D.N.Y. Mar. 23, 2004) (plaintiffs' allegations were

---

[5]    Plaintiffs seek to excuse the generalized and jumbled nature of their Complaint by asserting that courts in this district "routinely reject[]" depictions of complaints as "puzzle pleadings" (Opp. at 7 n.4).  That assertion confuses the notice pleading standard of Federal Rule of Civil Procedure Rule 8 with the more stringent, particularized pleading requirements of Rule 9(b) and the PSLRA.  Irrespective of whether the Complaint suffices under Rule 8 to notify Defendants of the broad outlines of Plaintiffs' claim, the Complaint does not come close to provide the specificity required under Rule 9(b) and the PSLRA.

[6]    Plaintiffs also point to ¶¶134, 139-145, 150 and 152 as examples of how the Complaint "identifies the reason as to why statements identified in the [Complaint] were false and misleading."  (Opp. at 8.)  As set forth more fully in Defendants' opening memorandum, however, those paragraphs also lack the specificity required by the applicable pleading standards.  (*See* Def. Mot. at 15)  Moreover, the citations to ¶¶ 144-45, 150 and 152 do not even bear on this point.  They contain allegations regarding Vodafone's asserted failure to comply with applicable accounting standards and lack of internal controls, and do not on any reasonable reading purport to explain why any of the statements included in the Complaint was supposedly "false and misleading."

sufficient to withstand a motion to dismiss because of plaintiffs' specific pleading regarding anticipated price declines resulting from increased competition, technology advances, and strategic alliances, and the allegations that the defendants knew or were reckless in not knowing about the "capacity glut as well as competition from impending new technologies" that would affect demand for the company's products and services, and that the company "'would have to sell 90% of its available capacity just to cover its cable construction costs.'") (Opp. at 10.)) Here, the Complaint's broad assertions about "the German telecom market" (¶ 142) and "disappointing" results (¶ 141) stand in clear contrast to the particularized pleadings in those cases.

　　　　Contrary to Plaintiffs' characterization of the decisions cited in their Opposition as "instructive," those decisions are not even analogous to this case.  For example, in *Carpenters Health & Welfare Fund* v. *Coca-Cola Co.*, 321 F. Supp. 2d 1342, 1352-53 & n.5 (N.D. Ga. 2004), the court held that the plaintiffs had pleaded their impairment claims with sufficient particularity because the plaintiffs had alleged specific factors in support of their claim that defendants had delayed recording an impairment charge and because there was no evidence that the defendants had conducted an impairment review during the class period.  The court noted that:

> Plaintiffs have not merely 'seized figures used in subsequent financial statements to show that the information should have been disclosed earlier.'… *Cf. In re Serologicals Sec. Litig.*, No. 1:00-CV-1025-CAP (N.D. Ga. Feb. 20, 2003) (unpublished opinion) (dismissing similar claim where it was undisputed that the company had performed an earlier impairment review, but the plaintiffs made no allegations calling into question the propriety of that review).

*Carpenters Health & Welfare Fund.*, 321 F. Supp. 2d at 1352-53; *see also* discussion of that decision in *Davidco Investors, LLC,* 2006 WL 547989, at *16-17.  Here, Plaintiffs acknowledge

that Vodafone conducted regular impairment reviews, and do not contest Defendants' showing in the opening motion submissions that Plaintiffs have failed to allege that Vodafone either did not conduct those reviews properly or disregarded or misrepresented the results of those reviews. (*See* Def. Mot. at 14.)  Plaintiffs' citation to *Selbst* v. *McDonald's Corp.*, No. 04 C2422, 2005 WL 2319936 (N.D. Ill. Sept. 21, 2005) fares little better, as the complaint in *Selbst* actually explained *how* the defendants' impairment analysis was flawed, specified *when* the impairment should have taken place, and alleged an amount certain by which McDonald's earnings statements were inflated.  *See Id.*, at *14-15.  Plaintiffs have made no such showing here either in their Complaint or in their improper attempt to amend that pleading in their Opposition.

> ### B.     The Complaint Fails to Allege that Vodafone Improperly Delayed Disclosure of Potential Tax Liabilities.

Plaintiffs fail to plead any of the particulars necessary to support their allegations that Vodafone deliberately delayed disclosure that it "faced massive multi-billion dollar tax payments over the next several years."  The Complaint alleges no more than that Vodafone "knew from discussions with tax authorities in several countries during the Class Period that the Company would be required to make multi-billion dollar cash tax payments beginning in fiscal 2006 or 2007."  (Opp. at 8.)  The Complaint does not even endeavor to provide the facts constituting the necessary "'who, what, where, when and how,'" *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 414 (D.N.J. 2005), *aff'd*, 500 F.3d 189 (3d Cir. N.J. 2007) (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)), to support that assertion, let alone the conclusion to which Plaintiffs ask this Court to leap—that the timing and substance of Vodafone's disclosures regarding the Company's potential tax cash payments amounted to fraud.

Plaintiffs never state when those discussions took place, who participated in those discussions or even which tax authorities in which countries allegedly were involved.[7]

In any event, the Plaintiffs' allegations regarding Vodafone's statement in November 2005 concerning potential tax cash payments fail because the Complaint does not address any prior statements on that subject, let alone establish that any such statements were insufficient. Indeed, as the "Lex" column of *The Financial Times* reported on November 16, 2005, the day after the disclosure at issue in the Complaint, "it is genuinely surprising that the market is so upset. A Pounds 9bn tax provision sits on the balance sheet—a fair clue that historically low cash tax payments might reverse." *Vodafone Suffers a Congestion Charge*, Financial Times (London), Nov. 16, 2005 at 20 (Razza Reply Decl. Ex. B). In fact, Vodafone's 2005 Annual Report, which was filed with the Securities and Exchange Commission on June 8, 2005, reported in the "Creditors" section of Vodafone's balance sheet that £4,759 million in taxes would be "falling due within one year." (*See* 2005 Annual Report at p. 100, attached as Exhibit C to the Razza Reply Decl.) That Annual Report further included in the "Provisions for Liabilities and Charges" section on page 106 a deferred taxation charge in the amount of £3,938 million. (*See* Razza Reply Decl. Ex. D.)[8] The Complaint not only fails to allege why these disclosures were inadequate, it does not even acknowledge their existence.

---

[7]     Significantly, none of Plaintiffs' alleged "confidential informants" says anything to confirm the occurrence, timing or substance of the supposed discussions with tax authorities.

[8]     *See also* Vodafone 2005 Annual Report (Form 20-F) (June 8, 2005) at 46 ("The Group's liquidity and working capital may be affected by a material decrease in cash flow due to factors such as . . . timing of tax payments and the resolution of outstanding tax issues . . . .") (Razza Reply Decl., Ex. E.); *id*. at 26-27 (describing ongoing tax litigation and noting that that Company has taken provisions of £1,757 billion, which it believed to be sufficient, but adding that "the amount ultimately paid by the Company (if any) upon resolution of the enquiry may differ materially from the amount accrued and, therefore, could have a significant effect on the profitability or cash flows of the Group in future periods.") (Razza Reply Decl. Ex. F.)

**C.    Plaintiffs' Failure to Plead, Instead of Merely Assume, Defendants' Knowledge of the Supposed Falsity of Vodafone's Statements Undermines Plaintiffs' Contention that those Statements Are Actionable.**

Rather than contest Defendants' characterization of each inactionable statement (Def. Mem. at 18-22; Declaration of Jordan T. Razza, dated June 8, 2008, Ex. A.), Plaintiffs assume away their pleading obligations, insisting that the well-established legal doctrines concerning puffery and forward-looking statements do not apply because Defendants "knew" for unspecified reasons that the challenged statements were false at the time they were made. (*See* Opp. at 15-17.) As discussed in detail both here and in Defendants' opening brief, however, Plaintiffs have not alleged any specific facts to demonstrate what Defendants knew and when they knew it. Their boilerplate incantations do not suffice. *See*, *e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). Similarly, the Complaint fails to plead the basis necessary to hold defendants accountable for the statements of third parties, such as securities analysts, quoted in the Complaint. *See, e.g., In re Aegon N.V. Sec. Litig.*, No. 03 Civ. 0603 (RWS), 2004 WL 1415973, at *15 (S.D.N.Y. June 23, 2004) ("An analyst report is not attributable to a corporation or corporate officials, and they have no duty to correct or update statements therein, unless they (1) adopted or placed their imprimatur on the report[s] or (2) intentionally fostered a mistaken belief concerning a material fact that was incorporated into the report[s].") (internal quotation marks and citation omitted); *see also Novak* v. *Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000).

## II.    Plaintiffs Fail Adequately to Allege Scienter.

Plaintiffs' allegations are insufficient to plead scienter, under either the recklessness or motive and opportunity standard, and their reliance on the fraud-by-hindsight approach employed throughout the Complaint cannot alleviate this deficiency.

A.      **Plaintiffs Fail to Allege Recklessness.**

Plaintiffs' argument is essentially that, because there was an impairment, there must have been fraud.  It is well established in the Second Circuit that, "[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."  *Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (quoting Novak, 216 F.3d at 311).[9]  Yet, when challenged to provide any basis for why they believe Defendants knew or recklessly disregarded the need for an impairment charge, Plaintiffs come up empty.  Moreover, the decisions on which Plaintiffs rely to suggest that the assumptions pleaded in the Complaint satisfy the Second Circuit's standard are inapposite because the Complaints in those actions included the types of particularized allegations that are so evidently lacking here.  *See In re Winstar Commc'ns*, No. 01 CV 3014 (GBD), 2006 WL 473885 at *6-8 (S.D.N.Y. Feb. 27, 2006) (complaint particularized the type of accounting violations at issue, the customers that were involved, defendants' deliberate misconduct and the way in which those activities resulted in the alleged overstatement of revenue and understatement of costs); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489, 495 (S.D.N.Y. 2004)) (complaint alleged in detail circumstances of substantial restatement of company's financial statements, resulting in bankruptcy, delisting and a formal investigation by the SEC and included specific allegations "that demonstrate high-level officials within the company ignored red flags that should have

---

[9]      Plaintiffs erroneously suggest that *Marcus* v. *Frome*, 275 F. Supp. 2d 496, 502 (S.D.N.Y. 2003), and *In re Sotheby's Holdings, Inc.*, No. 00 Civ 1041 (DLC), 2000 WL 1234601, at *6 (S.D.N.Y. Aug. 31, 2000), make clear that the Complaint need not refer to specific documents to support its allegations.  Both decisions require plaintiffs to identify the information to which the defendants had access that conflicted with the defendants' public statements.

alerted them to the fact that the company's reported financials were false when issued.").[10]  The particularized complaints in the decisions cited in Plaintiffs' Opposition stand in sharp contrast to the Complaint here, which fails to allege any specific fact that would suggest that Defendants fraudulently delayed reaching the technical accounting judgments as to the valuation of Vodafone's assets or the likelihood that a potential tax liability would be resolved within a particular time frame in a particular amount.

### B.    Plaintiffs Fail Sufficiently to Allege Motive.

Having failed to allege facts giving rise to "unusual insider trading" in the Complaint, Plaintiffs engage in rank speculation (not even included in the Complaint) as to why certain Defendants' holdings did not decrease over the Class Period and why Mr. Sarin acquired additional shares during that time.  (*See* Opp. at 28 & n.23.)  In support of their guess that Defendants "intended to sell these newly obtained shares at artificially inflated prices in the event the fraud lasted longer than the end of the Class Period" (Opp. at 28), Plaintiffs proffer reasoning that has been explicitly rejected by this Court.  *See In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 289 n.177 (S.D.N.Y. 2006) ("Plaintiffs' argument that defendants were motivated to commit fraud because they 'could have hoped to maintain the fraud in perpetuity thereby availing themselves of countless later opportunities to sell their eSpeed shares at artificially inflated prices,' can be easily dismissed because it flies in the face of this Circuit's well-established law.") (citation omitted.)

---

[10]    *City of Sterling Heights Police & Fire Ret. Sys.* v. *Abbey Nat'l, PLC*, 423 F. Supp. 2d 348 (S.D.N.Y. 2006), which, oddly, was not listed in the certification of the proposed supplemental Lead Plaintiff here, is likewise distinguishable, as the Complaint in that action included pertinent statements from a confidential source, an executive of the company; admissions from key executives; extensive press coverage regarding the securities; and significant GAAP violations.  *Id.* at 361.

Plaintiffs' Opposition seeks to conjure illusions of "unusual" trading by pointing to sales that bear none of the indicia of stock transactions that could give rise to a finding of scienter. As Defendants explained in their opening brief, these indicia clearly weigh against a finding of unusual insider trading. (Def. Mem. 24-26). Plaintiffs take the "lowest common denominator" approach, arguing that, because courts have occasionally found scienter where the proceeds or percentage of stock sold was less than those at issue here, the same result is required. The decisions on which Plaintiffs rely to attempt to support this myopic argument are either taken out of context or otherwise are inapposite.[11]

### III.    Lothian's "New Evidence" of U.S. Conduct is Insufficient to Establish Subject Matter Jurisdiction.

Lothian concedes that it cannot meet the "effects" test and relies exclusively on the "conduct" test in efforts to establish subject matter jurisdiction over its claims. But in the 132-page Complaint, Lothian has not alleged any fraudulent conduct, much less the United States-based conduct necessary to establish subject matter jurisdiction over Lothian's wholly foreign claims. Furthermore, the Complaint does not allege and Plaintiffs' opposition never even addresses the second prong of the conduct test, namely that Lothian must show that the defendants' "activities or culpable failures to act within the United States 'directly caused'

---

[11]    *See, e.g.*, *In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 140 (S.D.N.Y. 1999) (while certain defendants in that case sold only 17% and 11% of their holdings, the court actually considered the range of percentages of holdings sold by all of the individual defendants: *from* 17% to *67%* and *from* 11% to *100%* during the respective relevant periods); *Rubinstein* v. *Collins*, 20 F.3d 160, 170 n.39 (5th Cir. 1994) (relying partly on the fact that the alleged insider trading occurred "just before" negative disclosure); *Provenz* v. *Miller*, 102 F.3d 1478, 1491 (9th Cir. 1996) (sales occurred "shortly after" a critical conference call and one insider's sales consisted of "almost six times more stock than he had sold during the twelve months preceding the class period"). *Fecht* v. *Price Co.*, 70 F.3d 1078, 1084 (9th Cir. 1995), also is inapplicable, as it applies the Ninth Circuit's now-discarded *GlenFed* standard, which held, in conflict with the standard of the Second Circuit, that "plaintiffs may aver scienter generally . . . that is, simply by saying that scienter existed" to satisfy Rule 9(b). *Id.* 70 F.3d at 1082 n.4; *see also In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994). Not only is this standard not the law of the Second Circuit—it is no longer even the law of the Ninth Circuit. *See In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999).

[plaintiff's] claimed losses." *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 540 (S.D.N.Y.

2007) (citation omitted); *see also In re Bayer AG Sec. Litig.*, 423 F. Supp. 2d 105, 112-13

(S.D.N.Y. 2005); *Tri Star Farms Ltd.* v. *Marconi, Plc*, 225 F. Supp. 2d 567, 577-78 (W.D. Pa.

2002).

   Tacitly acknowledging that the allegations in the Complaint are inadequate to

premise subject matter jurisdiction over the claims of a foreigner purchaser of foreign shares on a

foreign exchange, Lothian, in another attempted back-door amendment to the Complaint, now

hinges its arguments on two "new" documents, neither of which demonstrates the type of

conduct necessary for subject matter jurisdiction.  Those documents—slides from two

presentations allegedly made to analysts and investors in New York in 2004 and 2005—at most

evidence *de minimis* activities that are insufficient to satisfy the first prong of the conduct test.

*See*, *e.g.*, *In re Yukos Oil Co. Sec. Litig.*, No. 04-5243, 2006 WL 3026024, at *10 (S.D.N.Y. Oct.

25, 2006) (defendant's activities in the United States, such as the solicitation of investors though

the personal appearance of executives, are insufficient for purposes of establishing subject matter

jurisdiction).  Not surprisingly, Lothian cites no decisions to support its contention that two

analyst conferences in the United States are sufficient to confer subject matter jurisdiction,

instead asserting that, because "these appearances and presentations were of the type that were

made at other times during the Class Period—and were done to maintain Vodafone's artificially

high stock price—they were more than 'merely' preparatory' to a securities fraud conducted

elsewhere."  (Opp. at 20.)  Further, Lothian makes no effort to address the particulars of the

decisions cited by Defendants (Def. Mem. at 5-10); rather, it attempts to dismiss them with the

conclusory assertion in a footnote that those decisions "are inapposite because they did not

involve the same type of conduct that took place in the U.S. here, and other connections to the

U.S. discussed above were not present in those cases."  (Opp. at 20 n.12.)

Lothian further concedes the weakness of its subject matter jurisdiction argument

by relying exclusively on a decision in the *Vivendi* litigation that patently is distinguishable.

(Opp. at 20.)  *See In re Vivendi Universal*, *S.A.*, No. 02 Civ. 5571 (RJH), 2004 WL 2375830

(S.D.N.Y. Oct. 22, 2004).  In that case, the corporate defendant's two principal officers "moved

their operations to New York and spent at least half of their time managing the company from

the United States during a critical part of the class period."  *Id.*, at *4.  The court reasoned that

this conduct, *managing the defendant corporation from the United States*, was more than

"merely preparatory," because the defendants spent "the last 11 months of the [class] period" in

New York.  *Id.*, at *25.  Two road show presentations in New York that are not alleged to have

had any impact on Lothian's investments in Vodafone securities cannot approach the level of

U.S. presence and conduct discussed in *Vivendi*.

Lothian's suggestion that this Court exercise supplemental jurisdiction over its

claims demonstrates that Lothian recognizes there is no independent ground for jurisdiction over

its claims in a U.S. court.  Lothian's contention, founded on decisions taken out of context, is

baseless.[12]  Jurisdiction is "assessed 'claim by claim,' and plaintiff by plaintiff," *In re Scor,* 537

---

[12]    *Exxon Mobil*, a diversity decision, held that, where one plaintiff satisfies the amount in controversy requirement a court may exercise supplemental jurisdiction over the claims of other plaintiffs.  *See Exxon Mobil Corp*. v. *Allapattah Serv., Inc*., 545 U.S. 546, 558-59 (2005).  The Second Circuit has expressly stated that *Exxon Mobil* "never held that § 1367(a) confers supplemental jurisdiction over jurisdictionally-deficient *federal* claims asserted together with another, jurisdictionally-proper claim."  *In re Literary Works in Elec. Databases Copyright Litig*., 509 F.3d 116, 127 (2d Cir. 2007) (emphasis in original).  *Ortman* merely remanded to the district court for a determination of whether, in light of the rights of the various parties under the contracts at issue, the exercise of ancillary jurisdiction over plaintiff's claims of infringement of foreign patents was proper.  *See Ortman* v. *Stanray Corp*., 371 F. 2d 154, 157-58 (7th Cir. 1967).  Neither decision supports the proposition that a court may exercise subject matter jurisdiction over the claims of foreign purchasers who fail to satisfy the conduct or effects test, if the court has subject matter jurisdiction over the claims of other plaintiffs.  *See In re Scor Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 569 n.19 (S.D.N.Y. 2008) (in the securities class action

F. Supp. 2d at 560 (quoting *Exxon Mobil Corp.*, 545 U.S. at 554), and the jurisdictionally-deficient claims of foreign purchasers must be dismissed even if subject matter jurisdiction exists over the claims of other purchasers. *See In re Nat'l Australia Bank Sec. Litig.*, No. 03 Civ. 6537 (BSJ), 2006 WL 3844465, at *8 (S.D.N.Y. Oct. 25, 2006).

## CONCLUSION

For the foregoing reasons and those set forth in the Defendants' other submissions in support of this motion, Defendants respectfully request that the Court grant their motion to dismiss the Amended Complaint in its entirety, on the merits and with prejudice, and grant to Defendants such other and further relief as the Court deems just and proper.

Dated:  New York, New York        Respectfully submitted,
        August 25, 2008

                                        /s/ Gandolfo V. DiBlasi
                                        Gandolfo V. DiBlasi (GD-5913)
                                        Theodore Edelman (TE-4678)
                                        Jordan T. Razza (JR-5877)
                                        SULLIVAN & CROMWELL LLP
                                        125 Broad Street
                                        New York, New York  10004-2498
                                        Tel:  (212) 558-4000
                                        Fax:  (212) 558-3588

                                        *Counsel for Defendants*

---

context, it is "highly doubtful" that exercising supplemental jurisdiction over foreign plaintiff's claims "would be appropriate.")

## CERTIFICATE OF SERVICE

I, Jordan T. Razza, hereby certify that, on August 25, 2008, I caused true and correct copies of: (1) Defendants' Reply Memorandum of Law in Support of Defendants' Motion To Dismiss The Amended Complaint; and (2) the Declaration of Jordan T. Razza, executed on August 25, 2008, and Exhibits A-F thereto, to be served electronically upon the following counsel for Plaintiffs:

Samuel H. Rudman, Esq.
David A. Rosenfeld, Esq.
Mark S. Reich, Esq.
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, New York  11747
Tel: (631) 367-7100
Fax: (631) 367-1173

I further certify that a true and correct copy of the Compendium of Unreported Decisions cited in Defendants' Reply Memorandum of Law and courtesy copies of the electronically filed documents were served on counsel for Plaintiffs today by Federal Express.

Dated: August 25, 2008                    /s/ Jordan T. Razza
                                          Jordan T. Razza